### HOLLAND v. HOLLAND.

FRAUDS, STATUTE OF—CONTRACTS—REAL PROPERTY—MEMORANDUM
—SUFFICIENCY.

An instrument in which the signer agreed to deed to a
certain person a half interest in designated property at
any time the deed might be demanded, is an insufficient
memorandum under the statute of frauds (3 Comp. Laws
1915, § 11977), where no consideration was named and
no time was stated within which the consideration must
be paid.[1]

Appeal to Huron; Beach, J.  Submitted January
19, 1917.  (Docket No. 30.)  Decided March 30, 1917.
Rehearing denied June 1, 1917.

Bill by Gottlieb Holland against Edward Holland
and another for the specific performance of a contract
to convey certain real property.  From a decree for
plaintiff, defendants appeal.  Reversed.

*X. A. Boomhower*, for appellants.

*Paul Woodworth*, for appellee.

This is a bill filed by the complainant to compel
specific performance of the following written instru-
ment:

"I hereby agree to deed Gottlieb Holland half in-
terest in the Hotel Smalley property at any time that
he may demand the deed.
                    [Signed]  "EDWARD HOLLAND.
"Witness:  S. H. COCHRAN."

The facts gathered from the bill, answer, and testi-
mony given upon the hearing are briefly as follows:

[1] On the necessity of specifying time of payment of purchase
price in contract or memorandum for the sale of real property,
see note in 33 L. R. A. (N. S.) 84.

In April, 1913, defendant Edward Holland bought a hotel property in the village of Caseville from one Paul Deford for the sum of $5,200. This sum was paid in cash, with the exception of a $1,800 mortgage which Edward Holland assumed. Prior to this time Edward Holland had been in the saloon business at Kilmanaugh. His interest in this business he sold for the sum of $4,600. He had borrowed from his wife and invested in the business about $3,000, which sum she had received from her father's estate. A year later, in April, 1914, plaintiff, who was a brother of the defendant Edward Holland, went to Caseville and purchased from Edward a one-half interest in the hotel property, paying therefor in cash the sum of $2,600. Thereafter, and until July 1, 1914, the two brothers continued to operate the hotel and saloon; the retail liquor business conducted therein being operated under a license which at all times stood in the name of the defendant Edward Holland. On July 1, 1914, the hotel building and saloon with all contents were destroyed by fire. After the fire plaintiff returned to the city of Detroit, but later, in the month of August, went to Caseville and received from his brother, the defendant, the sum of $500. Shortly after the fire plaintiff and defendant agreed to sell the land upon which the hotel had stood to one Edwards for the sum of $1,800. Edwards paid down $200 upon the contract and proceeded with the erection of a new building upon the site. He apparently, however, had not sufficient means to complete the building, and in October turned it over to the defendant Edward Holland, who bought such material as was upon the ground and proceeded with the erection of the building. On December 4, 1914, when the building was approaching completion, plaintiff visited his brother, the defendant, at Caseville, and there a statement of account was made up by Mr. Cochran, the cashier of the bank,

which showed that the partnership then had an indebtedness of $3,251.74, and that it had credits of $5,919.35. Deducting the debits from the credits, there appeared to be a net balance owned by the two brothers of $2,667.61, plaintiff's share of which amounted to $1,333.80. It was there agreed that defendant Edward should purchase from his brother, the plaintiff, his one-half interest in the assets of the partnership for the last-mentioned sum. Plaintiff had already received the sum of $551.50, and it was agreed that a check for $782.30 should be paid him to balance the account. A deed had been prepared from plaintiff and his wife to the defendant of plaintiff's one-half interest in the property. This deed plaintiff took from Caseville to Detroit, where it was executed by plaintiff's wife and by plaintiff, and was on December 4th delivered to the defendant Edward Holland, or to Mr. Cochran for Edward Holland, and at the same time plaintiff received the check for $782.30. The deed was immediately forwarded to the county seat for record, and plaintiff returned to Detroit. A week later, on December 11, 1914, plaintiff returned to Caseville from Detroit, and again became connected with the business. At that time he took the check for $782.30 back to the bank in Caseville and deposited it to the credit of his brother, the defendant, receiving at the same time the paper writing above set forth. The brothers continued the business together thereafter until October, 1915, when, defendant Edward having refused to convey an undivided one-half interest in the property to plaintiff, the bill in this cause was filed. With reference to the sale of his one-half interest in the partnership assets to the defendant, plaintiff testified:

"I accepted the check and turned over a deed of the place. I took the deed down to my wife and had her sign it. I took it down the latter part of November. I did not take it down in August. I came back, and

we went to the bank and made a settlement, this paper marked Exhibit 1, and at that time had an equal division of all the property after the bills were paid. Ed. and I were entitled to $1,333.80 each. I had already had $551.50 that was deducted from my share, and I got a check for $782.30 and turned over the deed and Mr. Cochran delivered the deed to Ed., and I went back to Detroit again."

Touching this incident the defendant Edward Holland testified:

"That was a final settlement between Gottlieb and myself. I think he gave me a deed that day. When we made the settlement he delivered the deed in the bank, either he or Mr. Cochran. The deed was afterwards put on record. Mr. Cochran did that. Mr. Cochran sent it to the register of deeds and had it put on record. That was a final settlement between Gottlieb and myself in the business at Caseville. At the time we made this settlement I understood that he and I had dissolved partnership that day. He then went to Detroit and came back on the 11th. The settlement was a final settlement, and he delivered the deed at that time. I paid him this check; was all he had coming."

The only other witness to the transaction was Mr. Cochran, the cashier of the bank, who gave the following testimony:

"Q. There was talk about their going out of business, dissolving partnership, at the time they made this settlement, and you drew up these papers?

"A. Yes; there was some talk.

"Q. You understood that they were dissolving the partnership, and Ed. was buying this man's interest?

"A. There was talk of it.

"Q. You understood it that way?

"A. I think I did.

"Q. You proceeded at their request to make out the papers?

"A. Yes.

"Q. And Exhibit 1 is the settlement you made at that time?

"A. Yes.

"*Q.* At that time the deed was delivered to Edward, the deed from Gottlieb and his wife was delivered to Edward?

"*A.* I think it was practically delivered. I think I sent it to Bad Axe for them."

This testimony on the part of Cochran was somewhat qualified by his statement that the defendant Edward desired Gottlieb to continue in the business with him or to re-enter into partnership with him at a later day. With reference to this settlement, the bill of complaint charges in paragraph 2 that plaintiff's deed of his one-half interest in the hotel property was delivered to defendant.

After a hearing on the merits a decree was entered in the court below granting the prayer of plaintiff for specific performance and setting aside and holding for naught two mortgages executed by defendant covering said hotel property. From this decree, defendants appeal.

BROOKE, J. (*after stating the facts*). It is perhaps a significant fact that the paper writing, specific performance of which is directed by the decree, is not set out in the bill of complaint. It is further significant that after the hearing in the court below was closed and nearly a month had intervened plaintiff applied for and secured a reopening of the case for the purpose of introducing further testimony, when he went upon the stand and gave testimony to the effect that, when he delivered his deed to Cochran and received defendant's check in return therefor in settlement of the partnership affairs, it was understood that Cochran was to hold the same for a time until he (plaintiff) should determine whether he should remain in partnership with his brother Edward or not. It is now asserted on behalf of appellee that there was no delivery of the deed from plaintiff to defendant sufficient to pass title. All the witnesses to the

transaction whose evidence was taken upon the first hearing agree that the deed was delivered in consideration of the check, and that the partnership was closed. The bill itself asserts a delivery and makes no claim of any condition in connection therewith, and the decree of the court assumes such delivery because it directs the conveyance to plaintiff of the one-half interest in the hotel property. Such a decree could only be based upon the assumption that the entire title to the property at the time the decree was made rested in the defendant Edward Holland. The decree refers to the agreement to reconvey, and direct specific performance thereof. The first question therefore to be determined is whether the writing relied upon is sufficient under our adjudicated cases to warrant the court in granting the relief sought. This paper is fatally defective in several vital particulars. It has been repeatedly held that a memorandum to be sufficient under the statute must be complete in itself and leave nothing to rest in parol. It must not only contain a description of the property to be conveyed and the consideration to be paid therefor, but it must definitely express the time or times of payment. *McMurtrie* v. *Bennette*, Har. Ch. (Mich.) 124; *Gault* v. *Stormont*, 51 Mich. 636 (17 N. W. 214); *Ebert* v. *Cullen,* 165 Mich. 75 (130 N. W. 185, 33 L. R. A. [N. S.] 84), and cases there cited. Assuming that the description of the property to be conveyed is sufficiently stated in the paper writing, there is no consideration named, nor is there any time stated within which said consideration must be paid. Where no time is fixed for performance, the court will not grant relief. *Gates* v. *Gamble*, 53 Mich. 181 (18 N. W. 631). Equity is without power to enforce a contract such as the one counted upon in the case at bar. Our conclusion upon this point renders it unnecessary to consider the claim advanced by the defendant Edward Holland that

the hotel property was the homestead of himself and wife, and that her signature was necessary to any enforceable contract for its sale. It is, we think, quite clear from an examination of the evidence given by the interested parties that it was never agreed between plaintiff and defendant Edward that Edward should reconvey a one-half interest in the hotel property to his brother, the plaintiff, for the sum of $782.30. That both parties at one time desired and perhaps expected to again become associated as partners in business cannot be questioned, but the terms of such contemplated partnership are not set out in the contract relied upon

The decree of the court below is reversed, and the bill dismissed, with costs of both courts to the defendants.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, and FELLOWS. JJ.. concurred. MOORE, J.. did not sit.