WINDIATE *v.* LELAND.

1. VENDOR AND PURCHASER—UNACCEPTED OPTION CONVEYS NO INTEREST IN LAND.

   An option to purchase land does not, before its acceptance, convey to the holder any interest in the premises.

2. FRAUDS, STATUTE OF—MEMORANDUM MUST BE COMPLETE.

   In order to satisfy the statute of frauds, a memorandum must be complete in itself and leave nothing to rest in parol.

3. SAME—INSUFFICIENT MEMORANDUM.

   A memorandum acknowledging the receipt of $200 to apply on $8,000 as the purchase price of land does not comply with the requirements of the statute of frauds.

4. Same—Payment of Purchase Price Alone Insufficient.

Purchasers of land under an oral agreement, who went into possession thereunder and made improvements, may not invoke the doctrine of part performance under 3 Comp. Laws 1915, § 11979, where the only thing they agreed to do was to pay the purchase price, since payment thereof alone is insufficient to take the case out of the statute.

5. Improvements—Right of Purchasers Under Oral Agreement to Recover for Improvements.

Under 3 Comp. Laws 1915, § 13211, purchasers of land under an oral agreement who remained in possession without making payments other than the initial one, are entitled to recover the amount the improvements made by them have increased the value of the premises not exceeding the cost of such improvements, but they are required to pay rent for the time they were in possession.

Appeal from Oakland; Covert (Frank L.), J. Submitted January 11, 1929. (Docket No. 93, Calendar No. 34,168.) Decided June 3, 1929.

Bill by Elma Windiate, widow of John Windiate, against Wilfred C. Leland and others for admeasurement of dower and determination of property interests. On cross-bill by Wilfred C. Leland and others and Frank Tyack and others, plaintiff was decreed dower interest and defendants Frank Tyack and others given claim against estate of John Windiate, deceased. Defendants Frank Tyack and others appeal. Modified and affirmed.

*Patterson & Patterson,* for plaintiff and defendant William A. Windiate, administrator of the estate of John Windiate, deceased.

*Andrew L. Moore,* for defendants Wilfred C. Leland and others.

*George A. Cram (John R. Rood,* of counsel), for defendants Frank Tyack and others.

FELLOWS, J. This is a continuation of litigation concerning the option and land involved in *Windiate v. Lorman*, 236 Mich. 531. After the decision in that case plaintiff, widow of John Windiate, filed this bill for the purpose of having her dower admeasured. She made all who had any apparent or real interest in the land parties. All of them concede she is entitled to the relief prayed and all acquiesce in the amount decreed her. All the defendants save Henry Mitchell claim some or the entire interest in the premises outside of the dower interest and assert such claim by way of cross-bills. Some additional facts should be stated. April 4, 1908, John Windiate and his wife conveyed to their son William A. their farm except the four acres involved in the former and present case. July 15, 1910, William A. sold to Janette Lorman the farm conveyed to him. She did not want to purchase it unless she could have an option on the four acres in case it came into the market, and the option set out in the former opinion was given. The four acres fronted on the lake and was available for a boat livery and small resort grounds. For some time defendants Tyack rented it for that purpose. In 1920 they negotiated with John Windiate to purchase it, and on July 21, 1920, Tyack paid him $200 and took the following receipt:

"$200.00.

"PONTIAC, MICHIGAN,
July 21, 1920.

"Received from Frank Tyack, two hundred and no-100 dollars to apply on the purchase price of land at Silver Lake, payment to begin November 1, 1920; purchase price agreed on eight thousand dollars.

"JOHN WINDIATE,
"Per L. M. EATON."

After the execution of this paper the Tyacks commenced the erection of numerous small buildings on the premises. They were inexpensive and of flimsy material and construction. It is apparent that Mr. Windiate had forgotten the execution of the option, and it was not recalled to his mind until he procured an abstract of the premises. While there is a dispute in the testimony, we are satisfied that it was orally agreed between Windiate and the Tyacks that Windiate should perfect the title if possible and convey it to the Tyacks for the consideration named in the receipt, but that on failure in such effort, the payment made should apply on the rent. The bill which was before us in the former case was filed in 1920, but the case was considerably delayed and did not reach this court until the June term, 1926. In the meantime the Tyacks continued in possession without further payments.

The Tyacks were not parties to the former case and are not bound by that decree. Their counsel with such earnestness in brief and oral argument as leaves no doubt of their fixed conviction that we erroneously decided the question of restraint on alienation, ask us to reconsider that question. We have spent much time in so doing. After such examination we are satisfied with the conclusion reached and the reason stated therefor. We shall, however, in view of the fullness of discussion by counsel, consider the subject a little more at length.

We pointed out in the former opinion that this State did not follow the common law. We took our statutory provision from New York, and we have quite uniformly followed the New York decisions in construing it.

We quote 3 Comp. Laws, 1915, §§ 11532 and 11533:

"(11532) Every future estate shall be void in its creation, which shall suspend the absolute power of

alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed.

"(11533) The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

Inasmuch as we do not follow the common law on the subject it will not be necessary for us to take up the many English and American cases cited to us by counsel dealing with the common-law rule. In some of the cases, as reason for applying the rule, it is pointed out that there are no persons in being who could by joining convey a good title. Thus in *Winsor* v. *Mills,* 157 Mass. 362 (32 N. E. 352), while declining to follow the suggestion, it was said:

"It has sometimes been suggested as a reason for the rule against perpetuities, that it is impossible for the owners of the estate to convey it, and that the estate is rendered inalienable 'though all mankind should join in the conveyance.'"

The views of the New York court are tersely stated in *Williams* v. *Montgomery,* 148 N. Y. 519 (43 N. E. 57), where it was said:

"The ownership is absolute whether the power to sell resides in one individual or in several. If there is a present right to dispose of the entire interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation. The ownership, although divided, continues absolute.

"The agreement in question, therefore, which expressly reserved the right to sell by mutual consent, did not violate the statute, because there was no

time, when an absolute title to the stock, or any part
of it, could not have been transferred by the joint
action of the four parties to the contract.''

The language of Mr. Justice CHAMPLIN, speaking
for the court in *Case* v. *Green,* 78 Mich. 540, follows
this. He said:

"It follows that William Case, the owner of the
fee or legal title, Hiram S. and Rebecca, the owners
of the life-estate in possession, and Adelbert, the
owner of the remainder, could by uniting in a deed,
or by separate deeds, convey an absolute fee in pos-
session. Upon William's death, the same persons,
with Jennie Rice, could have done so. After Jennie
conveyed to Hiram S., he and Adelbert could have
done so. Hence there has been no time but what
there were persons in being by whom an absolute
fee in possession could be conveyed, and conse-
quently the instrument is not a restraint upon the
absolute power of alienation, or prohibited by How.
Stat. §§ 5530, 5531.''

See, also, *Torpy* v. *Betts,* 123 Mich. 239; *Fitz-
Gerald* v. *City of Big Rapids,* 123 Mich. 281; *Blake-
man* v. *Miller,* 136 Cal. 138 (68 Pac. 587, 89 Am. St.
Rep. 120).

Nor are we able to construe the language of the
option as written as a restraint of alienation. Mr.
Windiate could have sold the land the second after
he signed the option. True, he should have given
Janette Lorman the first chance to buy, but, upon
notice being given to her, she would either buy,
thereby consummating a sale, or she would refuse,
thereby confirming his right to sell to anyone he
chose to. The alienation of the property was not
tied up as matter of law for a second's time.

Janette Lorman held an option. It did not before
acceptance convey to her any interest in the prem-
ises. This is settled by our own holding, by text-

writers, and by the decisions of other courts. In *Gustin* v. *Union School District*, 94 Mich. 502 (34 Am. St. Rep. 361), it was held (quoting from the syllabus):

"Many of the adjudicated cases upon what are termed 'options' for the purchase of land have arisen upon unilateral contracts, which do not vest any interest in the land in the vendee (*Richardson* v. *Hardwick*, 106 U. S. 252 [1 Sup. Ct. 213]), and only become binding by acceptance or performance of their conditions before the offer is withdrawn."

In Chaplin on Suspension of the Power of Alienation (3d Ed.), § 397, it is said:

"Options for the purchase of real property, though exercisable during a period not measured by two lives in being, do not suspend the absolute power of alienation, where there are persons in being who, by united action, can convey an absolute fee in possession." See, also, section 179.

In Gray on the Rule Against Perpetuities (3d Ed.), § 329, it is said:

"The rule against perpetuities concerns rights of property only, and does not affect the making of contracts which do not create rights of property."

In *Keogh* v. *Peck*, 316 Ill. 318 (147 N. E. 266, 38 A. L. R. 1151), it was held (quoting from the syllabus):

"An option to purchase does not create estate in land. No title, legal or equitable, is granted to the holder of the option by an option agreement.

"Options are not invalid as contrary to rule against perpetuities. Optional contracts, either in deeds or in long-term leases, giving an optional right of forfeiture and re-entry for covenant broken or a right of renewal are not invalid as being contrary to the rule against perpetuities."

See, also, 16 R. C. L. pp. 803, 804; 39 Cyc. pp. 1237, 1238; *Epstein* v. *Werbelovsky,* 184 N. Y. Supp. 330 (affirmed without opinion, 233 N. Y. 525 [135 N. E. 902]); *Hollander* v. *Central Metal & Supply Co.,* 109 Md. 131 (71 Atl. 442, 23 L. R. A. [N. S.] 1135). Viewed from any angle, we conclude that *Windiate* v. *Lorman* was correctly decided.

In order to satisfy the statute of frauds, the memorandum must be complete in itself and leave nothing to rest in parol. The receipt given by John Windiate to Tyack does not comply with this requirement. *Gault* v. *Stormont,* 51 Mich. 636; *Webster* v. *Brown,* 67 Mich. 328; *Hilberg* v. *Greer,* 172 Mich. 505; *Ebert* v. *Cullen,* 165 Mich. 75 (33 L. R. A. [N. S.] 84); *Rosenbaum* v. *Tyszka,* 192 Mich. 457; *Holland* v. *Holland,* 195 Mich. 513. Nor can defendants Tyack invoke the doctrine of part performance under 3 Comp. Laws 1915, § 11979. Not infrequently cases are presented to this court where a young person or a young couple agree to care for older ones in consideration of a will or deed of property when the services are fully performed. The current of their life is entirely changed, and a court of equity will, under such circumstances, decree specific performance under this statute. Illustrative of this class of cases is *Willard* v. *Shekell,* 236 Mich. 197. · But the instant case bears no semblance to such cases. The only thing Tyack agreed to do was to pay the purchase price. But, under the uniform holdings of this court, payment of the purchase price alone is not sufficient to take the case out of the statute. But, since the payment of the $200 in 1920, the Tyacks have not paid a cent. For eight years they have conducted a very successful and profitable business on the land in question, alleged in their cross-bill to be worth $4,000 to $5,000 annually. The Tyacks have no appealing equities. They are entitled to what the law gives them and no more.

They have been in possession for eight years. Under 3 Comp. Laws 1915, § 13211, and *Rzeppa* v. *Seymour,* 230 Mich. 439, they are entitled to the amount the improvements have increased the value of the premises, not exceeding the value of such improvements. This amount was fixed by the trial judge at $2,095. Inasmuch as he saw and heard the witnesses who were builders and who testified on the subject, was familiar with the *locus in quo,* and, as we understand the record, visited the premises at the request of counsel, we are not disposed to change these figures, but, as we are satisfied that it was agreed that the Tyacks should occupy the premises as tenants during the time the litigation was in progress in case Windiate was unsuccessful in defeating the option, we think they should pay rent for the eight years. The only figures available in the record fix this rental value at $100 a year. The Tyacks paid $200, which will apply on the rent.

The decree appealed from required the estate of John Windiate to pay this amount ($2,095). In this regard we think the decree should be modified. Defendants Leland are the assignees of Janette Lorman. They took her rights, but took them subject to her liabilities under the option. By its terms she was to pay the purchase price there fixed "plus the cost of any improvements put thereon." The decree will be modified in accordance with this opinion, and as so modified will be affirmed.

William A. Windiate, administrator of the estate of John Windiate, will recover costs to be divided equally between defendants Leland and defendants Tyack. Plaintiff will have costs of the court below. No other costs will be awarded.

NORTH, C. J., and FEAD, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.

WIEST, J., took no part in this decision.