(No. 5641.   December 22, 1930.)

LEONARD E. MOCHEL and BLANCHE E. MOCHEL, His Wife, Respondents, v. CHARLES E. CLEVELAND and CHRISTINE CLEVELAND, His Wife, and AMERICAN BANK & TRUST COMPANY, a Corporation, Appellants.

[5 Pac. (2d) 549.]

Tannahill & Leeper and R. E. Durham, for Appellants.

Cox & Martin and Lincoln E. Shropshire, for Respondents.

LEE, J.—In 1899, one Holcomb and his wife dedicated certain platted lots and streets to the city of Lewiston. The dedication was known as "Holcomb's First Subdivision of Lot 10 of Acres, Lewiston, Idaho." Prospect Avenue, an integral part of the tract dedicated, consisted of a strip, eighty feet wide, running north and south, the west boundary line thereof constituting the west boundary of said subdivision.

In 1922, the city of Lewiston by Ordinance No. 970 vacated the west twenty feet of Prospect Avenue and authorized the mayor and the city controller to execute quitclaim deeds "to the abutting landowners of the strip of Prospect Avenue hereby vacated and abandoned." There was no sidewalk along the west side of Prospect Avenue, but there was a curb approximately thirteen feet east of the new, west boundary line of said avenue, some thirty-three feet east of the original west boundary.

Plaintiffs and respondents, Leonard E. Mochel and wife, Blanche E. Mochel, representing themselves to be the owners

of certain residence property situate west of Prospect Avenue and abutting thereon, entered into a conditional sales contract with defendants and appellants, Charles Cleveland and wife, Christine, on or about May 2, 1927, whereby they agreed to sell appellants the said property for a consideration of $4,600, $700 to be paid down, and the remainder on December 1st, following: they also agreed that upon appellants' full compliance with the terms of the contract they would furnish appellants an abstract of title "showing good and merchantable title" to the premises.

In September, 1927, appellants sued respondents for rescission of the contract, alleging that they had been induced by certain false and fraudulent representations to undertake the purchase. Of the several false and fraudulent representations alleged, one only is material here. Appellants, then plaintiffs, charged that respondents, then defendants, "told and represented to them that the east property line of said premises and the west boundary line of Prospect Avenue was at the curb, pointed out the east corner of the said premises conveyed as being located at the curb, and stated to these plaintiffs that the area deeded to them began at the curb and extended west a distance of 142 feet," whereas, "the east property line of the said premises conveyed to these plaintiffs is not located at the curb of the street as pointed out upon the ground by the defendants but is in fact located approximately thirteen feet to the west thereof, and the City of Lewiston owns the intervening space, it being a part of said Prospect Avenue." This, coupled with the fact that the house was built on the crest of the hill overlooking the Snake River, the Clevelands complained forced them to "have practically no level yard whatsoever:" they prayed to be put *in statu quo*. The answer denied all material allegations; and, upon issue joined, the trial court found for defendants on all issues. While no issue had been joined thereon, the court found that the then defendants were the owners in fee simple of the entire property contracted to be conveyed. The court simply adjudged that plaintiffs "take nothing by their action" and that defendants recover costs. Upon appeal to the supreme court,

the decree entered was affirmed July 12, 1929. (*Cleveland v. Mochel*, 48 Ida. 37, 279 Pac. 410.)

On October 30th following, respondents instituted the action at bar, seeking specific performance and praying that, in case appellants fail to perform, the property be sold and the proceeds applied to the satisfaction of plaintiff's demand, and that judgment be entered for any deficiency. Appellants answered, denying performance on the part of respondents, and by way of cross-complaint alleging that respondents had agreed to furnish them a good and sufficient warranty deed together with an abstract showing good, merchantable title; that the title tendered was not "good valid and merchantable," but was on the contrary "unmerchantable and unmarketable." In support of this they averred that the east twenty feet of said premises formerly constituted a part of Prospect Avenue, that respondents had "attempted" to acquire title thereto under and by virtue of City Ordinance No. 970 aforesaid and a quitclaim deed from the city of Lewiston, dated September 28, 1929. They further charged that at the time respondents tendered them title on October 3, 1929, there was then pending in the district court a suit instituted by one, John R. Becker, against the city of Lewiston and others, which said action brought on July 16, 1927 "directly challenged," the validity of said Ordinance No. 970, sought to have the same declared null and void and the city restrained from issuing deeds thereunder. In addition, they claimed that third persons owning property abutting on Prospect Avenue immediately east of and opposite the property described in the contract were asserting an interest in and to the said disputed east twenty feet, that respondents had never acquired title thereto, and there was "grave and justifiable doubt, as to whether the ordinance was valid, whether or not the city had authority to pass the same and quitclaim this particular east twenty feet to respondents or that the latter ever did or could acquire title thereto under and through such ordinance and deed." They prayed for rescission, that plaintiffs take nothing by their complaint and that defendants recover the $700 theretofore paid. All this respondents denied.

The trial court found that respondents had fully performed their contract; that appellants had formerly brought against respondents the aforementioned suit in rescission, knowing at the time or having available to them all the defenses which they had set up in their cross-complaint; that on appeal from the ensuing, adverse judgment, that judgment had been affirmed by the supreme court, and had become *res judicata,* the parties and issues in both actions having been identical; that appellants, notwithstanding their knowledge of all the facts affirmatively plead by them, had remained in possession of the premises until December, 1929, and that all equities were with respondents. Judgment was accordingly entered in respondents' favor for the remaining purchase price and interest together with certain taxes, assessments, fire insurance premiums paid by them and costs. It was ordered that in the event of appellants failing to comply with the decree, the property should be sold at public auction, the proceeds applied to the satisfaction thereof, and judgment entered for any deficiency. Appeal followed.

Appellants attack practically all the findings for want of evidence, urge that the judgment and decree is contrary to law and that the court erred in overruling their motions for nonsuit and in the admission of certain evidence. First, they contend that their motions for nonsuit should have been sustained for the reasons that respondents failed either to plead or prove that the consideration to be paid was adequate or fair, and that they could not proceed for specific performance and at the same time demand foreclosure of a vendor's lien. There is nothing in the first contention. The California cases to this effect cited by appellant, notably *White v. Sage,* 149 Cal. 613, 87 Pac. 193, are based upon section 3391, California Civil Code, providing that specific performance cannot be enforced against a party to a contract, "if he has not received an adequate consideration for the contract" and, "if it is not, as to him, just and reasonable." Manifestly, the burden of pleading and proving these essentials is cast upon a plaintiff in California; such was the old equity rule. But, the modern rule now prevalent in a majority of jurisdictions holds that the duty

of alleging and the burden of proving inadequacy of consideration rests on the party relying upon it as a defense. Supporting the latter rule is the state of South Dakota, notwithstanding its statute is identical with that of California. (*Sturtz v. Ommen*, 32 S. D. 396, 143 N. W. 288.) In Idaho, we have no such statute. C. S., sec. 5663, reads: "A written instrument is presumptive of consideration."

C. S., sec. 5664, reads: "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

■■ Under such announcements we cannot but hold that inadequacy of consideration is a matter of defense. (*First Nat. Bank of Blackfoot v. Doschades*, 47 Ida. 661, 65 A. L. R. 900, 279 Pac. 416.) Nor can the second contention be sustained. Respondents are not urging a vendor's lien, existent only when title has passed and there is no other security. They had retained title under the contract, security in the highest sense. (*Mark Means Transfer Co. v. Mackinzie*, 9 Ida. 165, 175, 73 Pac. 135; *Barton v. Groseclose*, 11 Ida. 227, 232, 81 Pac. 623.) They had no vendor's lien to enforce but they had a security they could foreclose. Appellants cite *Hawkins v. Thurman*, 1 Ida. 598, upon the proposition that where title is retained under a contract that provides for a forfeiture and re-entrance by the vendor in case of default, such remedy is exclusive and a foreclosure of the property cannot be had. From the reported case, it is impossible to determine the nature of the pleadings or the facts plead. The opinion, after reciting that the defendants were in possession, states "the complaint shows that it was instituted to enforce a vendor's lien to secure the payment of the balance of the purchase money, etc." That the court had in mind the vendor's lien predicated upon an absence of security is evident from the following excerpt: "It is well settled that on a sale of lands, where, by the agreement of parties, provision is made for the security of the purchase money in some other way than by a lien upon the lands, such lien does not attach by *operation of law*, and the vendor cannot resort to it for security." (Italics ours.) The opinion con-

cludes with the statement that the "complainants showed *no equities* which entitled them to a decree for the sale of the land." (Italics ours.) "Vendor's lien," "operation of law," "such" lien, "equities," no mention of title retained. Full performance had been claimed by plaintiff, including tender of deed. Our best judgment is that the court considered as done by plaintiff all things that should have been done, and that he was not entitled to a vendor's lien, full security being held. Whether wrong or right, our interpretation, the matter has been set at rest by *Walsh v. Coghlan,* 33 Ida. 115, 190 Pac. 252, holding that the contractual remedy of forfeiture and repossession is not exclusive. Respondents had prayed for specific performance and that, should appellants default, foreclosure be had and deficiency judgment entered: they prayed for other, further relief. Foreclosure was not asked in the first instance, but only as a precaution against a possible, second suit. It was the business of equity to avoid multiplicity and adjudicate the subject matter and the rights of the parties proceeding from it without let for further ado. The remedies of a vendor were succinctly declared in *Maltby v. Conklin,* 50 Cal. App. 201, 195 Pac. 280, 282, where the court said:

"As stated by the court in *Sparks v. Hess,* 15 Cal. 194, in the case of a vendor's lien, the vendor has parted with the legal and equitable title, and possesses only a bare right, which is of no operative force or effect until established by the decree of the court; *while in a case of retention of the legal title as security for the purchase money the vendor's position is in some respects similar to what it would have been had he executed a conveyance to the vendee and taken from him a mortgage upon the property.* A vendor retaining title may in like manner sue at law for the balance of the purchase money, or file his bill in equity for specific performance of the contract, and take an alternative decree that, if the purchaser will not accept the conveyance and pay the purchase money, the premises be sold to raise the money, and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale." (Italics ours.)

■ Appellants complain of the trial court's holding that the findings and judgment of the rescission suit constituted *res judicata* as to the issues involved in the instant case. The issue in this case is that of good and merchantable title to the east twenty feet of the property: the issue in the former case was one of fraud comprising among other things a misrepresentation of boundaries. Appellants claimed that a thirteen-foot strip respondents agreed to sell them had been eliminated from the deed. The title to this thirteen-foot strip, always a part of Prospect Avenue, was not litigated at all in the former suit; and no issue had been tendered upon the east twenty feet, respondent's title to which the trial court, of its own motion, found good: at no time did the court find that any title was merchantable. Therefore the finding as to *res judicata* cannot be sustained.

■ It is submitted that respondents are estopped to maintain this action upon the ground that they should have set up as a counterclaim in the suit for rescission their demand for the purchase money. We cannot agree. A counterclaim must in some way qualify or defeat the judgment a plaintiff is praying for and is otherwise entitled to. Appellants sought a judgment destroying a contract. What possible part could a money demand have played in defeating appellants' object or the issue plead? The sole weapons available were positive denials: money demand was matter for cross-complaint, permissive but not mandatory under the statute. The controlling questions in this case are whether or not respondents furnished appellants an abstract showing good, merchantable title and whether or not the latter are in position to urge respondents' alleged failure to do so. Notwithstanding that a title may be good, it may be in such questionable shape as precludes marketability. Respondents' title has been and is being seriously questioned in divers quarters. A suit coupled with a *lis pendens* directly challenging the validity of said Ordinance No. 970 is awaiting final determination. It will not do to say that appellants' recital of this fact constitutes a collateral attack upon the ordinance. The recital merely advises that others are attacking it directly, that trouble is brewing over the

title, sufficient to perturb an experienced lawyer. Recognizing the rule that a filed *lis pendens* is not enough to justify grave doubt and suspicion, but that the substance of the suit must supply the grounds, Becker's action against the city raises a most serious contention, that of the city's right to deed this abandoned twenty feet of Prospect Avenue to anyone but the successor of the original dedicator. Furthermore, if the ordinance be void on its face, it can be attacked collaterally. We cannot say that any part of it is so void, since there does not appear therein any intent to execute a quitclaim deed to anyone not entitled to it. But appellants have directly alleged that respondents have never acquired any title to said abandoned part of Prospect Avenue from anyone except the city of Lewiston: and that contention supported by evidence is an issue before us.

Did the city own the fee? Answering affirmatively, respondents rely upon C. S., sec. 4091, which provides as follows:

"The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use; or as is thereon dedicated to charitable, religious or educational purposes."

This section taken from Nebraska in 1893 was theretofore appropriated from Iowa. In both states, this statute has been construed to pass to the city a fee simple absolute. (*Lindsay v. City of Omaha,* 30 Neb. 512, 27 Am. St. 415, 46 N. W. 627; *Pettingill v. Devin,* 35 Iowa, 344.) And, respondents contend that we are bound by the statute so construed prior to our adoption of it. This section was construed by this court in *Shaw v. Johnston,* 17 Ida. 676, 107 Pac. 399, 400, where the court said:

"While the acknowledgment and recording is equivalent to a deed in fee simple, it is not a deed in fee simple, and does not give the public the same right to sell or dispose of the same that a private party has to land for which he holds the title in fee simple. We do not think it would be contended that if a private owner dedicates a street or a block in a city to public use that the public could convey it to a

private party and have the property placed to some other use or purpose than that for which it was originally dedicated.''

It is contended that, inasmuch as this act was passed after the filing of the plat involved in that case, and was therefore inapplicable thereto, this enunciation was merely *dictum*. An examination of the record discloses that the complaint in its first paragraph alleged that defendant, Johnston, was the owner of the land constituting part of the subject matter. In support thereof, the brief argued that Johnston's predecessor, Byron, who held fee-simple title conveyed to Boise City all the title he had in the streets when he filed the plat of dedication. The argument was specifically based upon sections 91–93, 1893 Session Laws, now C. S., sec. 4091, along with other statutes then in force. The court, after noting that the section was inapplicable, went on to say:

''But in our view of the matter, that would make no difference.

''Some stress is laid upon the following language in said section, to-wit: 'Such plat is equivalent to a deed in fee simple.' ''

Then followed the construction above mentioned. This court has consistently held that, while the construction placed upon their statutes by other states prior to our adoption of them, is greatly persuasive, it is not conclusive. And we have in divers instances refused to adopt the foreign construction.

C. S., sec. 3963, provides that when any street, alley, avenue or lane shall be vacated, the same shall ''revert'' to the owner of the adjacent real estate. Despite the fact that Nebraska had this identical statute when she announced the construction respondents contend for, we are not satisfied with the reasoning that in effect eliminates the word ''revert'' therefrom, and of necessity substitutes therefor something entirely opposite. To go back does not mean to go forward. The city had title to the lands for public use only. When that use was abandoned, what did the legislators have in mind other than that the land should ''go back'' to the dedicator or his successors? If the city could

deed it to anyone else, there could in such instance never be a *going back:* nothing would "revert." (*Remey v. Iowa Cent. R. Co.*, 116 Iowa, 133, 89 N. W. 218.) Utah has a statute substantially similar to C. S., sec. 4091. Instead of declaring the acknowledged and recorded plat to be "equivalent to a deed in fee simple," it declares that it shall be "sufficient to vest the fee of such parcels of land as are therein expressed, named or intended for public uses for the inhabitants of such town and for the public for the uses therein named, or intended." (Sess. Laws (Utah 1890), p. 76, chap. 50, sec. 4.) Construing this section in *Sowadzki v. Salt Lake Co.*, 36 Utah, 127, 104 Pac. 111, 116, the court said:

"While the word 'fee' is used in the section, it is clear from what follows that it was not intended that the fee of the *corpus* or land itself should pass, but only the fee to the surface, and this only for public use for all purposes of a street or highway. The fee mentioned in the statute was thus what is known as a limited or determinable fee, and was created for a special purpose or purposes only, and hence was subject of abandonment."

This we think the proper construction. Not having a fee-simple title, the city could not by deed invest respondents with one; and appellants' grave doubts of the title offered are justified. But respondents insist that appellants are estopped to urge this defect, since with full knowledge of all the facts they failed to include it as a ground for rescission in the former action. At the time such action was instituted, the contract was not mature. There yet remained with respondents opportunity to secure a title consonant with their contract. As far as appellants knew, respondents could do this. They would not have been warranted in assuming respondents foreclosed, for the latter might have negotiated with the true owner or prevailed in a suit for adverse possession: a number of things might have happened.

Finally, respondents invoke laches, in that appellants, although acquainted with the facts and refusing to perform, remained in occupancy of the premises until

December, 1929, more than one month after the institution of the present suit. From a study of the record it appears that until October 3, 1929, respondents were still attempting to make good their contract. On that day, according to the abstract in evidence, they recorded or had recorded a release of mortgage. On the same day they recorded the city's quit-claim deed; and between these two instruments, for the first time, there appeared in the abstract Ordinance No. 970. Appellants had first seen the abstract in September preceding. Certified as of said October 3d, the abstract was thereafter tendered appellants and by them rejected under advice of counsel. Respondents announced they would stand on the title so tendered; and on October 11th appellants in writing refused to accept the title, declared a rescission and demanded a return of the moneys theretofore paid under the contract. Appellants first had notice that respondents intended no further attempts to cure the title, when the latter announced that they would stand on their title. Prior to that time, appellants cannot be said to be charged with laches. They have, in fact, however, used and enjoyed respondents' premises for a considerable time. For that, they should pay.

The judgment is reversed and cause remanded with instructions to the trial court to enter judgment against respondents upon their complaint and in favor of appellants upon their answer and cross-complaint, after determining the reasonable rental value of the premises for the time so occupied, and awarding respondents a credit therefor, judgment for any overplus to be entered in favor of the parties entitled thereto. Costs to appellants.

Givens, C. J., Budge and Varian, JJ., and Featherstone, D. J., concur.

ON REHEARING—OPINION AFFIRMED.

(December 11, 1931.)

PER CURIAM.—Nothing having been advanced on rehearing to change the court's conclusion, the former opinion will be adhered to.