706 P.2d 87

**T.W. WILSON and Elna Wilson, husband and wife,
Plaintiffs-Respondents,**

**v.**

**Ray S. HAMBLETON and Clara S. Hambleton, husband and wife; David R. Hambleton and Julie H. Hambleton, husband and wife, Defendants-Appellants,**

**and**

**Connecticut General Life Insurance Company, a Connecticut corporation; and Farmers & Merchants State Bank, a state banking corporation, Defendants.**

**No. 14954.**

Court of Appeals of Idaho.

Aug. 30, 1985.

Ray S. Hambleton and David R. Hambleton, pro se.

E. Don Copple of Davison, Copple, Copple & Copple, Boise, for plaintiffs-respondents.

WALTERS, Chief Justice.

In this case the district court entered summary judgment ordering a foreclosure sale of real property pursuant to Title 6, Chapter 1, Idaho Code. The sellers of the property, T.W. and Elna Wilson, brought this action after the buyers, Ray and David Hambleton and their spouses, defaulted in their payments on title-retaining, installment contracts. The Hambletons have appealed. We affirm.

The Hambletons contend there were issues of fact raised by the pleadings which would preclude the entry of summary judgment. *See* I.R.C.P. 56(c). Particularly, they contend that (1) an issue of usury was not decided by the district court; (2) there was no determination made by the court as to the fair value of the land to be sold at the foreclosure sale; (3) there was no determination made as to alleged fraudulent misrepresentations made by the sellers as an inducement for the Hambletons to enter into the land sale contracts; (4) there was no determination made of a claim by the Hambletons that a sale to them of certain farm machinery by the Wilsons was tainted by fraud on the part of the Wilsons; and (5) that a question of election of remedies by the Wilsons was raised by the pleadings and remains unresolved.

Before discussing the specific issues raised, we will first outline the course of the transactions and court proceedings.

The Wilsons sold two parcels of real property to the Hambletons. Each sale was evidenced by a written contract calling for annual installment payments from the Hambletons, with the Wilsons retaining title to each parcel of property until its respective price was fully paid. One contract was entered into in 1979, the other in 1980. The contracts and deeds to the property were placed in escrow with a local bank. When the annual payments due on each contract in November, 1981, were not received, the Wilsons sent written notice through the escrow holder to the Hambletons, declaring defaults of the terms of each of the contracts. Each notice specified, as grounds for default, that the annual payments due in November, 1981, had not been made and that the Hambletons had failed to pay the real estate taxes as required by the contracts. The default notices each allowed thirty days to the Hambletons to correct the specified defaults. Each notice also informed the Hambletons that, if the default was not cured within the time specified, the Wilsons would "consider said agreement to be in total default and breach and will then pursue any remedy available to [them] under the terms of the agreement or the laws of the State of Idaho." [1]

Alleging that the Hambletons had not timely remedied the defaults specified in each notice, the Wilsons filed suit in early 1982. Their complaint contained four causes of action. Their first and second claims for relief sought foreclosure of each land sale contract in the manner provided

1. The 1979 contract provided:
  [I]f default has not been remedied within thirty (30) days after notice thereof, the escrow holder shall upon demand by the Sellers, deliver all the documents mentioned in the preceding clause hereinbefore to said Sellers, and, without further notice, Sellers may then either:
  A. Declare the unpaid portion of the deferred balance of the purchase price, plus interest due therein [sic], as immediately due and payable, in which event Sellers may institute all necessary legal proceedings to collect same; or
  B. Declare this contract forfeited, in which event all of the Buyers' rights in the premises, all payments or principal and interest, all other sums paid by the Buyers in the performance of this contract, and all buildings, improvements, and fixtures placed upon the premises by the Buyers or the Sellers, shall be retained by the Sellers as liquidated damages for the use of and injury to the premises and any other damages and expenses suffered or incurred by the Sellers by reason of Buyers' default, and the Sellers shall be entitled to immediate possession thereof, and shall be released from all liability to convey the premises to the Buyers.
  . . . .
  It is further understood and agreed that in case of default by the Buyers not remedied within the period hereinabove provided, Buyers will upon demand, deliver up possession of the subject premises to Sellers peacefully and without resort to Court action, provided however, that nothing herein contained shall be construed as an election of remedies or as a waiver by the Sellers of any rights or remedies otherwise provided by law for breach of this agreement. . . .

Worded somewhat differently, the 1980 contract provided:
  Time is of the essence of this Contract, and in the event of the failure of the buyer to comply with the terms hereof, the seller shall be released from all obligations in law and equity to convey the said premises and the buyer shall forfeit all rights thereto unless the terms of this agreement are complied with after thirty (30) days written notice served personally or by registered mail upon the buyer, and all payments made on said premises and all improvements, fixtures and buildings, whether now thereon or to be placed thereon, shall be retained by the said seller as liquidated damages to reimburse the seller for any loss or damage which seller may have sustained by reason of the failure of the buyer to perform this agreement and as compensation for the reasonable use and occupation of the said premises.
  It is further understood and agreed that in case the default by the said buyer is not remedied within the period hereinabove provided for, the buyer will upon demand deliver up possession of the above described premises, including all improvements, to the seller peaceably and without resort to court action, provded, however, that nothing herein contained shall be construed to be an election of remedies or as a waiver by the seller of any rights or remedies otherwise provided by law for breach of this contract, such as declaring the whole amount of the contract price immediately due and payable at the option of the seller upon default and breach of the contract on the part of the buyer, including the right at the option of the seller of foreclosing this contract in the manner provided by law for the foreclosure of mortgages.

by law for the foreclosure of mortgages, in lieu of simply declaring a forfeiture. The Wilsons' third cause of action was for collection of another debt allegedly due them from the Hambletons, evidenced by a promissory note. The Wilsons alleged that the note carried interest at nineteen percent, but that they would waive all interest in excess of thirteen percent per annum. Their fourth cause of action was for collection of an open account allegedly due them from the Hambletons for a quantity of diesel fuel sold by the Wilsons to the Hambletons on credit.

Initially, the Hambletons answered the Wilsons' complaint by denying all allegations. The Hambletons then filed an amended answer. There, they admitted all allegations of the Wilsons' first two causes of action, relating to the land sale contracts, except that they denied the Wilsons were entitled to foreclosure of the contracts as mortgages and they denied an allegation concerning a subordinate interest of a bank named as defendant in the suit. As to the Wilsons' claim to collect on the promissory note, the Hambletons' amended answer admitted the note's execution and maturity but asserted the note called for usurious interest. Consequently, they affirmatively claimed the interest should be forfeited and that they should be entitled to an offset against the principal due on the note, by an amount equal to twice the usurious interest rate. In respect to the open account claim for diesel fuel, the Hambletons denied any liability, alleging that the debt was included in the obligation evidenced by the promissory note sought to be collected in the Wilsons' third cause of action.

In their amended answer, the Hambletons also raised several affirmative defenses to the actions for foreclosure of the land sale contracts. Although the Hambletons admitted they were in default of the contracts, they averred that when they failed to cure the defaults within thirty days after notice of default had been served on them and as required by the contracts, the Wilsons caused the escrows to be closed and retrieved all documents from the escrows.

This, the Hambletons alleged, constituted an election to treat the Hambletons' contract interests forfeited and precluded the Wilsons from later suing to foreclose the contracts as mortgages.

After the Hambletons filed their amended answer, the Wilsons moved for judgment on the pleadings in respect to the two foreclosure causes of action and in respect to collection on the promissory note, their third cause of action. Following a hearing, the district court denied the Wilsons' motion for judgment on the pleadings. In respect to the foreclosure actions, the court ruled:

Although all facts pleaded in the Complaint and necessary to a judgment of foreclosure as if the contracts were mortgages are admitted in the Hambleton's [sic] Amended Answer, plaintiffs did not plead the existence and amounts of taxes paid by them or which are now delinquent or the amounts of insurance premiums which plaintiffs paid or are obligated to pay. Nevertheless, plaintiffs seek to recover on account of such taxes and insurance premiums. See paragraphs one and five of the prayer of the Complaint.

The Court, therefore, has decided to deny judgment on the pleadings on these two causes of action. The admissions in the pleadings will remain, so it will not take much time to try the tax and insurance premium issues and the parties must come to court, anyway, to try cause of action three and four.

The Hambletons main defense to causes of action one and two was a contention that plaintiffs are not entitled to foreclose the contracts as if they were mortgages.

The Court finds the law to be, however, that where the contract is still executory on both sides and it expressly provides for foreclosure as if the contract were a mortgage or reserves to the vendor all remedies, both in equity or at law, whether provided for in the contract or not, the vendor may elect the remedy of

foreclosure as if the contract were a mortgage. See *Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho 662, 586 P.2d 1378 [1978]; *Ellis v. Butterfield*, 98 Idaho 644, 570 P.2d 1334 [1977]; *Walsh v. Coghlan*, 33 Idaho 115, 190 P. 252 [1920]; *Mochel v. Cleveland*, 51 Idaho 468, 5 P.2d 549 [1930].

Consequently, it will be the rule of this case that plaintiffs may further prosecute the remedy of foreclosure of the contracts of sale as if they were mortgages.

The court also denied the Wilsons' motion for judgment on the pleadings as to the claim for collection on the promissory note. The court held that the Wilsons' allegation that they would waive nineteen percent interest, in apparent contemplation of the Hambletons' objection to usury, would constitute an attempted unilateral reformation of an agreement, *i.e.*, the promissory note, which would be improper and would "greatly reduce" the deterrent effect of the penalty for usury.

The Hambletons next filed a motion for leave to file an "Amended Answer and Counterclaim." A copy of the proposed pleading was lodged with the district court and the motion was noticed for hearing. The "answering" portion of the proposed pleading was identical to the earlier amended answer filed by the Hambletons. The counterclaim portion of the pleading sought recovery from the Wilsons for (a) such amount by which any payments made under the contracts had exceeded the fair rental value of the subject properties while in the possession of the Hambletons; (b) for rescission of the contracts, recovery of monies paid on the contracts and punitive damages for alleged fraud and false representations by the Wilsons when the parties entered into the land sale contracts; and (c) for recovery of damages resulting from misrepresentation in the sale of certain farm machinery by the Wilsons to the Hambletons.

However, it does not appear from the record presented to us in this appeal that the motion for leave to file the Hambletons' amended answer and counterclaim was ever heard. The record does not show whether the motion was either granted or denied. At least the record does not contain a *filed* copy of the amended pleading in accordance with the rules of civil procedure.[2]

The record next shows that the Wilsons moved for summary judgment. An affidavit was filed by them, setting forth the amounts of taxes and insurance which had not been paid by the Hambletons, but which were required to be paid by the Hambletons under the contracts. In response, the Hambletons filed an affidavit by David Hambleton reciting that, following receipt by the Hambletons of the Wilsons' notices of default, the Wilsons retrieved all documents from the escrow holder, took possession of the properties and leased the land, with an option to purchase, to a third party.

After hearing on the Wilsons' motion for summary judgment, the court granted the motion insofar as the Wilsons' two causes of action for foreclosure of the land sale contracts. A judgment was entered in favor of the Wilsons and against the Hambletons for the principal and accrued interest due on the contracts, together with the amounts of taxes and insurance paid by the Wilsons which should have been paid by the Hambletons. The amount of the judgment was decreed to be secured by a mortgage from the Hambletons in favor of the Wilsons, and the county sheriff was directed to sell the subject properties at public

---

**2.** In relevant part, I.R.C.P. 15(a) provides as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper.

auction. The decree provided that any party to this action could be a purchaser at the sheriff's sale. The decree directed the sheriff to execute deeds in favor of any purchasers at the sale after expiration of the time allowed by law for redemption. The decree provided that any sale would be subject to an existing, superior mortgage of Connecticut General Life Insurance Company, a defendant named in this action. The decree provided for disposition of the proceeds of sale, after the sheriff's costs of sale, by application to the amount of the judgment. Any surplus remaining would be paid to the Hambletons and if the proceeds of the sale were insufficient to satisfy the Wilsons' judgment, the Wilsons could recover the deficiency from the Hambletons.

Approximately one year after this judgment was entered, the parties stipulated to dismissal, with prejudice, of the Wilsons' causes of action for collection on the promissory note and on the open account concerning the diesel fuel.

▆▆▆ We now turn to the issues raised on this appeal by the Hambletons. They first contend that the question of usury—relating to the promissory note sought to be collected in the third count of the Wilsons' complaint—was not resolved by the district court. They contend this issue raised a factual dispute which would prevent summary judgment. We disagree. The summary judgment was entered in respect to the first two counts of the Wilsons' complaint for foreclosure, under the mortgage statutes, of the Hambletons' contractual interest in the two parcels of real property. Partial summary judgment on those two counts was not precluded simply because of an outstanding dispute over another count in the same complaint. I.R.C.P. 54(b). The summary judgment and decree of foreclosure was not certified by the district court as final for the purpose of appeal under I.R.C.P. 54(b). The effect of any remaining dispute over the promissory note would not be to preclude summary judgment on the foreclosure actions, but rather, would be to preclude an · appeal

from the summary judgment, absent a rule 54(b) certification. *Viani v. Aetna Insurance Co.*, 95 Idaho 22, 501 P.2d 706 (1972); *Southland Produce Co. v. Belson,* 96 Idaho 776, 536 P.2d 1126 (1975). Under *Viani* and *Southland Produce,* the Hambletons' appeal from the summary judgment could have been dismissed as having been prematurely taken. However, after the notice of appeal was filed in this case and before the appeal was submitted to us for resolution, the Wilsons' claim for collection on the promissory note was dismissed pursuant to stipulation of the parties. This removed from the case any issue concerning a usurious rate of interest in the note. The usury issue therefore became moot. The claim for collection of the open account for diesel fuel likewise was dismissed, resulting in resolution, by summary judgment, of the pleaded disputes between the parties, and therefore the summary judgment became final for the purpose of appeal. *See, e.g., Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n,* 105 Idaho 504, 670 P.2d 1294 (1983). We hold that summary judgment on the foreclosure claims was not precluded by the usury question.

We next address the Hambletons' contention that the district court failed to determine the fair value of the property, before ordering the sheriff's sale. No citation of authority nor argument has been presented to us by the Hambletons on this issue. *See* I.A.R. 35(6) and (7). At best, we deem this issue to relate to I.C. § 6–108 which provides that no deficiency judgment can be entered, on the foreclosure of a mortgage on real property, for an amount exceeding "the difference between the mortgage indebtedness plus costs of foreclosure and sale, and the reasonable value of the mortgage property, to be determined by the court in the decree upon the taking of evidence of such value."

▆▆▆ Although the judgment and decree of foreclosure in this case allowed for a deficiency judgment in favor of the Wilsons and against the Hambletons, there is no indication in the record that the district court ever took evidence regarding, or

made a determination of, the reasonable value of the subject property. We are not persuaded that such a failure should defeat the foreclosure order; it simply protects the mortgagor from liability for a deficiency balance. In this case, such a defense remains available to the Hambletons, in the event further proceedings are conducted to collect any deficiency balance from them.

■ The next two issues raised by the Hambletons can be addressed jointly. They contend that a claim by them for fraud by the Wilsons in respect to the land sale contracts, and in respect to the sale of certain farm machinery to the Hambletons remained for resolution, thus precluding summary judgment on the Wilsons' foreclosure actions. Again we disagree. These claims were never asserted in any pleading filed by the Hambletons in this action. These claims were alleged as proposed counterclaims in their "Amended Answer and Counterclaim" which was never filed with the district court. We have reviewed the Hambletons' proposed amended answer and counterclaim. Even if that pleading had been filed, it did not appear to plead the factual basis of fraud with sufficient particularity to raise a genuine issue. Thus the district court was not precluded from granting summary judgment on the foreclosure claims.

■ The final issue raised by the Hambletons concerns an alleged election of remedies which would bar the Wilsons from seeking foreclosure under the mortgage statutes, rather than forfeiture of the Hambletons' contract rights and interest. The Hambletons argue that the Wilsons' closure of the escrow accounts, and the removal of documents from the escrows, constituted an election to accept forfeiture as their remedy for breach of the contracts. We disagree. We have held that the doctrine of election of remedies should be viewed as a principle of estoppel. *Keesee v. Fetzek*, 106 Idaho 507, 681 P.2d 600 (Ct.App.1984).

> If a plaintiff is said to have "elected" a remedy, through certain acts or statements prior to litigation, the proper inquiry should be whether the defendant

has relied upon such acts or statements and, therefore, would be unfairly prejudiced by assertion of a different, inconsistent remedy. If so, the plaintiff should be bound to the remedy earlier chosen, not because of the election doctrine but because of the estoppel principle. Absent estoppel, he should be free to choose a different remedy.

*Id.* at 510–11, 681 P.2d at 603–04.

Here, when the notices of default were served on the Hambletons, the Hambletons were informed that if the alleged defaults were not corrected within thirty days, the Wilsons would declare the contracts to be at an end, would close the escrows and retrieve the papers therefrom, and would pursue any remedy available by statute. The closing of the escrow and removal of the escrow documents were not, in our opinion, affirmative acts by the Wilsons inconsistent with any other remedy available to them under the contracts or under the law. Further, the Hambletons have not shown any reliance, to their detriment, upon the Wilsons' closure of the escrows. We hold that the Wilsons were not estopped from pursuing the foreclosure remedy.

The summary judgment ordering foreclosure is affirmed. No attorney fees on appeal. Costs to respondents, Wilsons.

SWANSTROM and BURNETT, JJ., concur.