(No. 7141. June 27, 1944.)

LEONARD J. MARKS and MARGARET MARKS, Appellants, v. G. W. STROHM and THELMA STROHM, Respondents and Cross-Appellants.

(150 P. (2d) 134.)

J. H. Felton for appellants.

Laurence E. Huff for respondents and cross-appellants.

AILSHIE, J.—May 1, 1937, Leonard J. Marks and Margaret M. Marks, appellants herein, entered into a contract with respondent, G. W. Strohm, whereby they agreed to sell and Strohm agreed to purchase a tract of land in Latah county, for which respondent agreed to pay the purchase price as follows:

". . . . the purchaser shall pay to the sellers after paying interest on the mortgage and taxes on the land, two-fifths of all crops raised on said land, including hay, and shall deliver to the sellers, after the payment of such interest and taxes, a warehouse receipt for two-fifths of all grain raised, and there shall be credited to the purchaser on the consideration the market price of such grain and hay at the time said receipt is delivered; and the purchaser shall pay at the next interest-paying date all delinquent and current payments due or accruing under the terms of the Federal Land Bank mortgage above described. The purchaser shall pay all delinquent taxes on the sellers' land, that herein described, and other lands, for the years 1934, 1935, and 1936, and all sums paid as such mortgage payments and taxes shall be credited on the purchase price herein. The purchaser shall pay all taxes levied and accrued upon the lands herein described for the year 1937 and subsequent years during the life of this contract.

"The purchaser shall have possession of all of said lands immediately, except nine acres and the buildings thereon until October 1, 1937, and twenty acres now seeded to wheat, both of which tracts the sellers reserve possession until October 1, 1937. . . ."

Respondent was let into possession of all the premises described except some buildings and nine acres of ground, which appellants retained possession of for approximately fifteen months thereafter, at which time they delivered possession to respondent.

The contract contained a forfeiture clause reading as follows:

"Time and performance are the essence of this contract and failure on the part of the purchaser to make the payments herein set forth by him to be made, or to perform any other agreement on his part to be performed, shall operate to terminate the contract, and in case of default agrees to surrender possession of said premises upon written notice from the sellers of the termination of the contract, setting forth such default, and upon such termination all sums theretofore paid by the purchaser under the terms hereof shall be and remain with the sellers as liquidated damages for failure to perform."

August 29, 1940, appellants served on respondent notice of forfeiture and cancellation of contract, stating the reasons for declaring the default and forfeiture as follows:

"This default as specified herein is as follows: failure to pay all delinquent taxes on the sellers' lands, those herein described, and other lands for the years 1934, 1936, 1938 and 1939."

May 8, 1942, appellants filed their complaint against respondent, praying that "the defendants may be required to set forth the nature of their claims; that all adverse claims of the defendants may be determined by a decree of this court; that the defendants be forever enjoined and barred from asserting any claim whatsoever in or to the said lands and premises adverse to the plaintiffs; and that defendants be enjoined from using said lands or any part thereof; . . . ." Demand was subsequently made for bill of particulars, which was furnished; and thereafter, September 3, 1942, amended complaint was filed, which was answered, and the case went to trial before the court without a jury. The court found, inter alia, and the evidence supports the finding, as follows:

"XI.

"Defendants have paid the payments of principal and interest, the Federal Land Bank, on the mortgage described in the contract promptly when due.

XII.

"That during the trial of the case, plaintiffs' attorney repeatedly offered to accept defendants tender of the warehouse receipts for two-fifths of the crops raised on the prem-

ises in the years 1940 and 1941, and stored in warehouses, being plaintiffs' Exhibits in Evidence Nos. Eleven (11), Twelve (12) and Thirteen (13), with the reservation, however, that the acceptance of such tender would in no way affect the rights of the plaintiff, and defendants' attorney upon each occasion refused to modify such tender in any way, and at the close of the trial, plaintiffs' attorney withdrew such warehouse receipts from the files with the avowed purpose of selling the oats represented thereby, and such warehouse receipts were later deposited in the files by the attorney for the plaintiff, and stamped paid.

### XIII.

"The defendant made payments of principal upon the Federal Land Bank Mortgage, prior to November 5, 1942, in the amount of $124.84.

### XIV.

"The defendant paid delinquent taxes on plaintiff's land, that described in the contract of sale, and other lands for the years of 1933, 1934, 1935 and 1936, in the total amount of $448.57.

### XV.

"By mutual agreement and course of dealings, defendant advanced money and services to the plaintiff, and plaintiff accepted them in lieu of warehouse receipts for crops raised in the crop years of 1937, 1938 and 1939. The parties had settlements of their accounts for the crop years of 1937, 1938 and 1939 on three occasions, after the end of each crop year, and settlement for the crop year of 1939 was made on or about March 9, 1940, upon which date, defendant delivered to the plaintiff and plaintiff accepted defendants' Exhibit No. 37, being a check of $84.71, in full of their accounts to that date. The parties by mutual course of dealings, deducted the taxes and Federal Land Bank interest from the gross value of the crops and determined that the plaintiff was entitled to two-fifths (2/5) of the difference as a payment to them and a credit to the defendants under the contract upon the purchase price of the land. Defendants' Exhibit No. 2 reads as follows:

'This is to certify that *the* L. J. Marks and G. W. Strohm *has* the 1937 crop settlement and our book account settled to date Oct. 11th 1938.' "

The specifications of error, three in number, al-

though they do not comply with the requirements of the rules (Rule 52; sec. 7-509, I. C. A.; see, also, *State v. Thomey*, 61 Ida. 60, 63, 97 P. (2d) 659), in specifying the insufficiency of evidence are evidently intended to raise the issue of insufficiency of evidence to support the findings and judgment and we shall consider them as so intended.

■ It will be seen, that the contract provides for a "written notice from the sellers of the termination of the contract;" and it further provides that the notice shall set forth "such default." This requirement was evidently intended to enable the purchaser to forthwith comply with the requirement of the contract or suffer the forfeiture. For that reason, the contract required the notice to set forth the *default* by stating in what the default consisted. In this case the default was specified as the "failure to pay all delinquent taxes on the sellers' lands. . . for the years 1934, 1936, 1938 and 1939." Appellants are bound by the terms of their own notice.

These taxes were paid subsequent to notice and prior to the filing of amended complaint, as shown by the above finding by the court.

■ In the course of the dealing between the parties during the years since the execution of the contract, their several transactions indicate a waiver of any default with reference to the delivery of warehouse receipts for two-fifths of annual crops. Moreover, the evidence discloses that the parties actually did employ an accountant, to audit their accounts and render them a statement, which was subsequently accepted by both parties. Later and during the trial, respondent authorized the delivery to appellants of warehouse receipts for grain stored. Appellants accepted the same. From the foregoing and other similar findings, the court reached the correct conclusion, that the appellants waived any default that had been made in the delivery of warehouse receipts or payment therefor.

Respondent has cross-appealed from that portion of the judgment, reading as follows:

"The following sentence in the ambiguous portion of such paragraph, 'and the purchaser shall pay to the seller after paying interest on the mortgage and taxes on the land,' shall be read substituting the phrase 'in addition to' for the word 'after,' the same being the Trial court's interpretation of the ambiguity contained in the following

paragraph of the contract, referred to by the Trial Court as 'such paragraph;'

"And the purchaser shall pay to the sellers after paying interest on the mortgage and taxes on the land, two-fifths (2/5) of all crops raised on said land, including hay, and shall deliver to the sellers immediately after the payment of taxes a warehouse receipt for two-fifths of all grain raised."

A consideration of the entire contract convinces us that the interpretation of the trial court is correct. In other words, it was evidently the intention of the parties, when they drew the contract, to provide that the purchaser should pay the Federal Land Bank mortgage of $2,000 and receive credit therefor on the purchase price; and that he should keep up the interest payments as they fall due; and that none of the interest payments should be charged against the purchase price. It is further evident, that the purchaser was to pay back taxes for 1934, '35, and '36, and whatever they amounted to should be credited on the purchase price of $7,000. On the other hand, it is clear that they intended that the taxes accruing for 1937 and subsequent years should be paid by the purchaser but should not be credited on the purchase price. It is a fair interpretation of the contract, to hold that the two-fifths of the crop to be paid to the vendor should be computed on the gross crop before payment of taxes rather than out of the net crop after the payment of taxes and interest on mortgage.

The contract will not bear the interpretation claimed by cross-appellant, that the taxes should first be paid out of the income from rents, and that the net balance should be divided, two-fifths to the vendor and three-fifths to the vendee.

The judgment is affirmed. In affirming the judgment, it must be understood, and it is so intended, that respondents' "right of possession and equity," specified in the decree, is and shall continue to be subject to compliance with all the terms and conditions of the contract since the date of the decree. No costs awarded.

Holden, C. J., Budge, Givens and Dunlap, JJ., concur.