399 P.2d 255

George H. DOHRMAN and William K. Rosenberry, Co-Partners doing business as D & R Lumber Company, Plaintiffs-Respondents,

v.

K. D. TOMLINSON and Jane Doe Tomlinson, Husband and Wife, Defendants-Appellants.

No. 9459.

Supreme Court of Idaho.

Feb. 19, 1965.

Blake, Givens & Feeney, Lewiston, for appellants.

McFadden & Park, St. Maries, for respondents.

KNUDSON, Justice.

Under date of January 13, 1959 respondents (plaintiffs) entered into a written contract with defendant White Pine Sash Company under the terms of which said defendant agreed to sell to respondents approximately 1269 acres of land situate in Benewah County, Idaho. The purchase price was $18,500, payable by a $6,000 down payment, the receipt of which was acknowledged, and the balance in annual installments plus interest at 4% per annum on all deferred payments, as follows:

(1) $4,200 or more within 12 months of date of contract

(2) $4,200 or more within 24 months of date of contract

(3) $4,100 or the balance within 36 months of date of contract

This contract provided that respondents as purchasers would cause the payment of the unpaid balance of the purchase price to be guaranteed in writing by K. D. Tomlinson (hereinafter referred to as appellant), a lumber broker of Duluth, Minnesota. In consideration of such guarantee respondents were to have possession of the premises with the right to cut and remove the timber thereon so long as the contract was being complied with. The guarantee agreement executed by appellant bears date the 10th day of January, 1959.

Respondents paid the annual installment due January 13, 1960 but failed to make payment of the installment due January 13, 1961. During December 1961 appellant made the payment of the past due installment together with the final payment which was to become due January 13, 1962, and received from White Pine Sash Company an instrument entitled "Sellers Assignment of Contract and Deed", which contained an assignment of said contract and a quitclaim deed to the real estate described therein. Said instrument became lost and was re-executed under date of June 14, 1962.

Under date of March 16, 1962 respondents notified appellant that they had deposited $6,165.44 (which was believed by respondents to be the balance due appellant) with the Farmers and Merchants Bank at Rockford, Washington, with instructions to remit said sum to appellant upon tender of deed to the premises involved together with revenue stamps thereon. Additional notices of like import were mailed to appellant under dates of April 18, 1962 and April 30, 1962.

On July 19, 1962 respondents commenced this action seeking specific performance of the purchase contract and damages allegedly resulting from appellant's wrongful detention of the premises. Appellant filed his answer and cross-complaint September 24, 1962.

Under date of August 2, 1962 appellant mailed his "Notice of Declaration of Forfeiture and Cancellation of Contract" to respondents wherein and whereby respondents were notified that unless the payments then in default under the contract were made within 30 days from the date of mailing the notice, appellant, as owner and vendor by assignment, thereby elected to declare a forfeiture and cancellation of the purchase contract.

At the commencement of the trial, this action was dismissed as to defendant White Pine Sash Company. After trial before the court sitting without a jury, judgment was entered awarding damages to respondents and directing conveyance of the subject property to respondents. This appeal is from said judgment.

Appellant contends that the court erred in making the following quoted Finding of Fact, to-wit:

"5. That on March 16, 1962, plaintiffs made a valid and sufficient tender, in writing, to K. D. Tomlinson of the full amount of the remaining balance under said contract; that plaintiffs tendered $6,165.44, a greater sum than that actually due, and demanded that Tomlinson convey the above-described land to them."

for the reasons that the evidence does not support it and that the tender referred to does not comply with I.C. § 9–1501, which provides:

"An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

The uncontradicted evidence discloses that respondents arranged for a loan of sufficient money to pay the amount stated in their written tender dated March 16, 1962, and caused the same to be deposited in the bank with instructions to deliver such amount to appellant upon receipt of deed to the premises with revenue stamps attached;

that written tender was made by letter written by respondents' attorney dated March 16, 1962 under which respondents offered to pay $6,165.44, which is more than the court found to be payable, and gave full information and notice regarding the tender. Notwithstanding the fact that two additional letters of like import were sent appellant under dates of April 18 and April 30, 1962, appellant made no response and respondents filed this action July 19, 1962. By the letter of March 16, 1962 appellant was requested to make known to respondents any objection he had to the offered mode of performance. The language used was:

"If this procedure is unsatisfactory to you in any manner, please advise, and we will be happy to accommodate you."

In this connection I. C. § 29–112 provides:

"All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor if not then stated."

In the instant case appellant had not only the opportunity to object but was invited to do so. He did nothing and cannot now complain of the procedure suggested to close the transaction. Metzker v. Lowther, 69 Idaho 155, 204 P.2d 1025.

Appellant complains that the amount tendered did not cover the balance payable under the contract. The record discloses that prior to and during the existence of the contract here involved, the parties have maintained an open account wherein credit and debit entries relating to the many transactions between them were regularly made and credit and debit balances were carried for substantial periods. Entries regarding the payments made by appellant under his said guarantee agreement were carried in this account. The record discloses that on December 13, 1961 appellant paid the balance of said purchase contract in the amount of $8,936.33, in which amount he was given credit in said account. However, the court found that on March 16, 1962 (date of tender), after all proper debits and credits were allowed, respondents were indebted to appellant in the amount of only $5,350.90. In Kelley v. Clark, 23 Idaho 1, 129 P. 921, this court stated:

"Tender is the unconditional offer of a debtor to the creditor of the amount of his debt. This means the real amount of the debt as fixed by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due,—actually due."

See also Boise Lumber Co. v. Independent School Dist., 36 Idaho 778, 214 P. 143.

■ Since the tendered amount exceeded the amount found to be due and no objection having been made either to the mode, form or substance of the offer, the offer, under the circumstances, constituted a proper tender. (Harding v. Home Investment etc. Co., 49 Idaho 64, 286 P. 920, 297 P. 1101; Allis-Chalmers Mfg. Co. v. Harris, 56 Idaho 769, 59 P.2d 345.)

■ There is no merit to appellant's contention that the evidence fails to show that respondents, at the time tender was made, had the present ability to pay the amount of the tender. The only purpose for which the money was being retained at the bank was to make payment of the amount owing to appellant. In fact the evidence showed that the money was still at the bank on the date of the trial, June 25, 1963, and available.

■ Appellant's further contention that he had a right to declare a forfeiture of the purchase agreement is predicated upon the assumption that no valid tender had been made by respondents. Appellant specifically refers to respondents' failure to pay the last two installments payable under the purchase contract and argues that "The effect of this default was to deprive the vendee of any interest in the land contract, except the right to cure said default within 30 days of the day the notice of forfeiture was served under the terms of the agreement". By the terms of the purchase contract involved, if the vendor desired by reason of default in the payments, to end and conclude respondents' right to purchase, it was obligated to give written notice to the purchasers of its intention so to do, following which the purchasers were given 30 days within which to comply with the terms of the contract. Forfeitures are abhorrent to the law and all intendments are against them. Stockmen's Supply Co. v. Jenne, 72 Idaho 57, 237 P.2d 613. The written contract governs and it required notice in order to cut off respondents' right to purchase. It is also stated by appellant that his "Declaration of Forfeiture" dated August 2, 1962 was served upon respondents on August 8, 1962, which was 20 days after this action had been commenced. Having concluded that respondents' tender of March 16, 1962 was valid, it follows that appellant's last mentioned contention does not require further consideration.

■ Appellant contends that the following quoted Finding of Fact is not supported by the evidence, to-wit:

"7. That as of March 16, 1962, the net amount due from plaintiffs to defendants under said contract, after allowance of credits for lumber sold and delivered to defendants and interest thereon and after charging plaintiffs with interest on balance due from time to time from them to defendants, was

$5,350.90, as fully established and set forth in the testimony of the witnesses and in plaintiffs' exhibits 5, 6, 10 and 12."

Exhibits disclosing the bookkeeping practices of the respective parties relative to their mutual account were introduced in evidence. The credits and debits as referred to in said finding are in keeping with the practice followed by the parties themselves regarding their account, and the net amount found due by the court is clearly supported by the testimony and exhibits.

The trial court found that respondents were entitled to recover damages upon the following stated separate grounds:

(1) Loss of use and possession of the premises thereby preventing respondents from leasing the land for grazing purposes, causing damage to respondents in the sum of $2,700.

(2) During 1962 respondents had opportunity to sell 200 acres of said land at a profit of $10.50 per acre above cost under the contract and having been prevented from so doing by action of the appellant they were thereby damaged in the sum of $2,100.

(3) Respondents borrowed money with which to make the tender and they were required to pay interest thereon at the rate of 8% per annum. Interest at said rate from date of tender on the amount

of tender ($6,165.44) was allowed as damages, which when computed to July 1, 1963 amounted to $637.00 and it was directed to continue accruing at the rate of $1.37 per day until delivery of the deed.

Appellant contends that the court erred in making each of such findings and awarding damages accordingly.

■ Respondents rely upon I.C. § 45–915 as authority for sustaining each award of damages made by the court. Said statute provides:

"When any mortgage or conditional sales contract, affecting the title to real or personal property, has been satisfied, the holder thereof or his assignee must immediately, on the demand of the mortgagor, purchaser, or the successor in interest of either, execute, acknowledge, and deliver to him a certificate of the discharge thereof so as to entitle it to be recorded, or he must enter satisfaction or cause satisfaction of such mortgage or conditional sales contract affecting the title to real or personal property, to be entered of record; and any holder, or assignee of such holder, who refuses to execute, acknowledge, and deliver to the mortgagor, purchaser, or the successor in interest of either, the certificate of discharge, or to enter satisfaction, or cause satisfaction of the mortgage or

conditional sales contract to be entered, as provided in this chapter, is liable to the mortgagor, purchaser, or his grantee or heirs, for all damages which he or they may sustain by reason of such refusal, and shall also forfeit to him or them the sum of $100.00."

Respondents contend that this statute allows the injured party *all damages* which he may sustain by reason of a refusal to deliver the instrument evidencing satisfaction of the contract involved. This statement is correct, however the term "all damages" as used therein means the compensation which the law will award for the injury done. The measure and elements of such damage are controlled by law.

The general rule of damages applicable to the facts of the instant case is discussed in the case of Ellis v. Mihelis (1963), 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, as follows:

"A party to a contract for the purchase or exchange of land who is entitled to a decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he was entitled to a conveyance. * * * If the court orders it to be performed, the decree should as nearly as possibly require performance in accordance with its terms. One of the terms is the date fixed by it for completion, and

since that date is past, the court, in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay and permits the defendant to offset such amounts as may be appropriate. The result is more like an accounting between the parties than like an assessment of damages."

The general rule is also stated in 7 A.L.R. 2d 1211, to be that

"When specific performance is granted of a contract to convey real property, the court will enforce the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. It will compensate the purchaser for any loss of the use of the property during the delay by awarding him the rental value of it, or the net rents and profits of it, for the period. It will compensate the vendor for any loss of the use of the purchase money during the delay by awarding him the appropriate interest for the proper period. To either party it will give credit for such expenditures in relation to the property, or otherwise occasioned by the delay, as should be borne by the other. [citing many cases]"

In Gage v. Leslie (1927), 123 Kan. 72, 254 P. 362, the court had under consideration a contract to convey land under which possession was to be given to plaintiff August 11, 1923. It was determined that plaintiff was entitled to specific performance of the contract and to a deed and possession of the property at the time named in the contract, and the court stated:

"It is well settled that the time of performance, and not the time when a decree is rendered requiring performance, fixes the time when plaintiff's right to rents and profits attaches. The repudiation of the contract by the defendant and the delay caused by the litigation did not modify its terms nor change the right to the parties under it. If the contract is to be enforced at all, it must be enforced as the parties have made it. Courts have no discretion to change contracts or to do other than enforce them according to the stipulations of the parties. * * *"

See also Johnson v. Jones (1946), 109 Utah 92, 164 P.2d 893; Pritchard Petroleum Co. v. Farmers Co-op Oil & Sup. Co. (1948), 121 Mont. 1, 190 P.2d 55.

Respondents allege that they were denied the use and possession of the land involved and prayed damages for the wrongful deprivation of possession, use and enjoyment of said land in the amount of $7,500.00. In support of this claim for damages respondents introduced evidence of rental value which was given by a licensed real estate broker who has had 30 years experience in handling real estate and farm loans. He testified that there was quite an area within the property involved, that was good grazing land which would support 150 head of cattle for the period of five months each year from the first of May to October; that the going rate and fair price for grazing rights on that type of pasture was $3 to $3.50 per head per month. Such testimony was introduced without objection on the part of appellant and no evidence whatever was introduced to deny or contradict it.

" * * * a failure to object to evidence when introduced is a waiver of objection that it is inadmissible under the pleadings. Evidence introduced without objection stands as evidence in the case for all purposes. [cases cited.] And the same is sufficient to support a finding."

Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370; Ford v. Connell, 69 Idaho 183, 204 P.2d 1019. The finding of the court is amply supported by uncontradicted evidence and the allowance of damages made to respondents for loss of use of the premises involved to the date of trial, June 25, 1963, is justified.

Appellant's contention that the court erred in finding and awarding dam-

ages in the amount of $2,100 which allegedly resulted from respondents' having been prevented from selling 200 acres of land at a profit, should be sustained. The acreage involved in the alleged resale deal was not identified and respondents cannot be permitted to recover damages for not being able to sell at a profit the same property in connection with which they have been allowed damages for the loss of its use; the terms of such sale were not stated and no proof whatever was introduced tending to show that the offeror was able to purchase. In fact the following quoted evidence tends to show that he was not able. When the respondent Dohrman was asked during the trial if he thought the offeror would still purchase at the same price, respondent answered:

"I think he will. He has now purchased some other land and right at the present time *he is still a little short of money* but he still wants this of ours, too." (emphasis supplied)

In this case such claimed damages are speculative and the evidence offered in support of this alleged damage is not adequate to sustain such award. Head v. Crone, 76 Idaho 196, 279 P.2d 1064; O'Brien v. Best, 68 Idaho 348, 194 P.2d 608.

Appellant also contends that the court erred in making the following quoted Finding of Fact and awarding damages thereunder, to-wit:

"10. That plaintiffs, prior to March 16, 1962, borrowed $7,000.00 from an individual in order to make the tender described in paragraph 5, above, for which sum they have paid and are continuing to pay interest at the rate of 8% per year; that such sum has been held and is still being held in the Farmers and Merchants Bank of Rockford, Washington pending delivery to plaintiffs of a deed to said land; that such interest is allowable to plaintiffs as damages, but only to the extent of 8% on $6,165.44, the amount of the tender actually made; that such interest totalled $637.09 to July 1, 1963, and has continued to accrue since said date at the rate of $1.37 per day."

We agree with appellant that such finding is contrary to law. The applicable rule is stated in Ellis v. Mihelis, supra, as follows:

"The guiding principle with respect to the calculation of the damages incident to the decree of specific performance, as we have seen, is to relate the performance back to the date set in the contract. Timely performance of the contract would result in the purchaser receiving the rents and profits of the land but being denied the use of the purchase money, and a purchaser who seeks to recover rents and profits must

permit an offset for his use of the purchase funds during the period that performance was delayed. * * *"

In the case before us the trial court allowed, and we do hereby affirm, recovery by respondents for loss of use of the premises involved. If respondents were permitted to recover for the loss of use of the premises and also interest on the unpaid purchase balance, they would be in a better position than if the contract had been timely performed. Respondents would have been deprived of the use of that money (concerning which the court awarded interest) had the contract been timely performed. Respondents are not entitled to the interest awarded. Anderson v. Michel, 88 Idaho, 228, 398 P.2d 228.

Contention is made that the court erroneously concluded that appellant failed to prove damages as alleged in their cross-complaint. We have carefully examined the record and find that the evidence submitted relative to any damage allegedly sustained by appellant is indefinite and speculative. The court was entirely justified in reaching such conclusion.

We have considered each of the other assignments of error and find them to be without merit.

It is ordered that the judgment here appealed from be modified by deleting therefrom the following:

"IT IS ORDERED, ADJUDGED AND DECREED, that plaintiffs have judgment against defendants for the sum of $295.80 plus $1.37 per day from December 1, 1963, until defendants deliver to plaintiffs their deed as hereinafter ordered."

It is also ordered that this case be remanded to the trial court with instructions to allow respondents damages in the amount of $2,700 for loss of rental value to the date of June 25, 1963; that the court hear and consider such additional evidence as may be offered relative to the rental value of the property involved for the period, if any, subsequent to June 25, 1963, during which respondents may have been wrongfully deprived of the possession of the property by appellants; that the court determine the amount of such rental value and allow that amount plus the sum of $2,700 hereinbefore mentioned as an offset against the amount found due appellants under the contract, to-wit, $5,350.90, and enter judgment in favor of appellants for the balance. If the total of such rental value exceeds the balance due under said contract, judgment for respondents should be entered in the amount of such excess.

The judgment is modified and the cause remanded with directions to proceed in accordance herewith. No costs allowed.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.