681 P.2d 600

**Jimmy P. KEESEE and Ruby J. Keesee, husband and wife, Plaintiffs-Appellants,**

v.

**Joseph P. FETZEK and Allied Investments, Inc., an Idaho corporation, Defendants-Respondents.**

No. 14381.

Court of Appeals of Idaho.

April 30, 1984.

Petition for Review Denied June 25, 1984.

Gary L. Morgan, Morgan & Wellman, Caldwell, for plaintiffs-appellants.

Stanley W. Welsh, Clemons, Cosho & Humphrey, William J. Hines, Imhoff & Lynch, Boise, for defendants-respondents.

BURNETT, Judge.

This case presents the unusual dilemma of sellers seemingly impaled upon the forfeiture provision of a title-retaining real estate sale contract. The transaction went awry when the buyer defaulted and the sellers notified him that the contract would be terminated if the default were not cured. However, when the buyer failed to cure, the sellers decided to sue on the contract rather than to terminate it, because the property had deteriorated to a value less than the contract balance. The buyer insisted upon forfeiture. In a summary judgment, the district court agreed with the buyer, ruling that the sellers were limited to forfeiture as their exclusive remedy. The sellers have appealed.

The sole dispositive issue is whether the contract, and the notice sent to the buyer, actually resulted in a forfeiture. For reasons explained below, we hold that no forfeiture occurred. This holding makes it

unnecessary for us to address other issues raised by the sellers, relating to the consequences of forfeiture. The summary judgment is reversed.

We begin our analysis by noting the factual and procedural context in which forfeiture was asserted in this case. Then we examine the contention that forfeiture resulted from an election of remedies by the sellers. Finally, we turn to the argument that a forfeiture was self-executing under the contract and the language of the notice sent to the buyers.

## I

On appeal from a summary judgment, we review the record to determine whether there are genuine issues of material fact and, if not, whether the prevailing party below was entitled to judgment as a matter of law. I.R.C.P. 56(c). Here, the essential facts are undisputed. The sellers, Jimmy and Ruby Keesee, entered an installment contract for sale of urban land, together with a furnished home, to Joseph Fetzek. The contract provided that the buyer would keep the premises in good repair. In the event of default, the sellers were given the option of declaring forfeiture or of suing to enforce the contract. The contract and a deed were placed in escrow.

Several years into the contract term, buyer Fetzek assigned all of his interest to a third party, Allied Investments, Inc. However, it does not appear that Fetzek was released from his obligations under the contract. Subsequently, the contract fell into default. The sellers sent Fetzek a "notice of default" stating that his interest (and, indirectly, that of his assignee) would be "cancelled and terminated" in thirty days for failure to make timely payments and for allowing the premises to deteriorate. But when thirty days had passed without cure, the sellers did not demand possession of the property nor did they demand return of any papers from escrow. Rather, they filed a complaint against the purchaser and his assignee, seeking judgment for the unpaid balance. In the alternative, the sellers sought a judicial sale of

the property and a deficiency judgment. Only if these remedies were deemed to be unavailable did the sellers request, as a final alternative, forfeiture of the contract; but even in that event, they also sought judgment for damages caused by waste on the premises.

The buyer and his assignee moved for a summary judgment holding that the sellers were entitled to no relief other than simple forfeiture. In response, the sellers moved for dismissal of their complaint, without prejudice, so they could send the buyer a modified notice of default containing no reference to termination of the contract. The district court denied the sellers' motion to dismiss, and granted the buyer's motion for summary judgment, with the following explanation:

[The sellers] cancelled and terminated the agreement by electing to serve the notice of default, which cancellation and termination became final upon the lapse of thirty days after the service of the notice, the [buyer] having failed to pay the delinquent payments.

The court's language suggests two bases for its decision—the doctrine of election of remedies, and the view that the forfeiture was self-executing. The word "electing" suggests the former rationale; the phrase "termination became final upon the lapse of thirty days" implies the latter. The parties have argued both rationales on appeal without distinguishing clearly between them. We believe the rationales are separate. We will, therefore, consider each in turn.

## II

Election of remedies is an ancient doctrine created by the courts. It requires a plaintiff to choose between inconsistent remedies for redress of a single injury. The doctrine originated as a means to prevent double recovery and to limit potential harassment of defendants. See Fraser, *Election of Remedies: An Anachronism*, 29 OKLA.L.REV. 1, 2 (1976). The doctrine has been recognized in Idaho. Our Supreme Court has imposed two requirements

for its application. First, the remedies available actually must conflict with each other. *E.g., Elliot v. Collins,* 6 Idaho 266, 55 P. 301 (1898). Second, the plaintiff must have taken some decisive act indicating an intent to pursue a particular remedy. *Robinson v. Spicer,* 86 Idaho 138, 383 P.2d 844 (1963).

In this case the sellers' remedy of causing a forfeiture, by cancelling the contract, conflicts with other remedies that would have the effect of enforcing the contract. Moreover, the sending of a notice to the buyer, stating that the contract would be cancelled unless the default were cured in thirty days, is a decisive act indicating the sellers' intent—at that time—to pursue the specified remedy. Thus, the tests for applying the election doctrine appear to be satisfied here. Consequently, we must examine the continued viability of the doctrine itself.

Commentators have criticized the election doctrine, calling it a "delusion," a "judicial weed," and an "anachronism." *E.g.,* Hine, *Election of Remedies, A Criticism,* 26 HARV.L.REV. 707 (1913); Note, *Election of Remedies: A Delusion?,* 38 COLUM.L.REV. 292 (1938); Note, *Election of Remedies: A Judicial Weed?,* 16 OKLA.L. REV. 193 (1963); Fraser, *Election of Remedies: An Anachronism,* 29 OKLA.L. REV. 1 (1976). Its historic purposes—to avoid double recovery and to prevent harassment—now are served by other principles. Double recovery is prevented by the principle of satisfaction. Harassment of defendants is prevented by the principle of claim preclusion, a form of res judicata, which bars successive suits on the same claim, regardless of the remedy sought. *See generally Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983).

The election doctrine is closely akin to a prohibition formerly imposed upon inconsistent pleadings. At one time, an Idaho plaintiff was required to choose between competing remedies at the pleading stage of litigation. *See, e.g., MacLeod v. Stelle,* 43 Idaho 64, 249 P. 254 (1926). But the case law has shifted toward allowing prayers for alternative remedies. *Galvin v. Appleby,* 78 Idaho 457, 305 P.2d 309 (1956). Our civil rules now explicitly reflect this shift. *See* I.R.C.P. 8(e)(2), 18(a).

Nevertheless, the phrase "election of remedies" persists in the modern lexicon of the law. It has appeared—although the doctrine was not applied—as recently as our Supreme Court's decision in *Hatfield v. Max Rouse & Sons N.W.,* 100 Idaho 840, 606 P.2d 944 (1980). However, even in cases where the doctrine purportedly has been applied, close examination reveals that the doctrine exists in name only. For example, the California Supreme Court has stated that a "change in remedies does not bring about an election of remedies unless the change involves a prejudice to the opposing party." *Commercial Centre Realty Co. v. Superior Court,* 7 Cal.2d 121, 59 P.2d 978, 982 (1936). *Accord Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377 (1945). Our Supreme Court, referring to election of remedies in pleadings, also has stated that "the more reasonable rule is that the mere bringing of an action ... in which no element of estoppel *in pais* has arisen, that is, where no advantage has been gained or no detriment has been occasioned, is not an election." *Gridley v. Ross,* 37 Idaho 693, 701–02, 217 P. 989, 991 (1923). The election doctrine has become a form of estoppel. *See generally* Note, *Election of Remedies: When is Election Irrevocable in Contract-Fraud Situations?* 36 CALIF.L.REV. 636 (1948).

■■■ We believe the time has come to escape the imprisonment of obsolete language. Where the term "election of remedies" has no substantive meaning apart from the principles of satisfaction, claim preclusion or estoppel, it should not be invoked as a separate doctrine. If a plaintiff is said to have "elected" a remedy, through certain acts or statements prior to litigation, the proper inquiry should be whether the defendant has relied upon such acts or statements and, therefore, would be unfairly prejudiced by assertion of a different, inconsistent remedy. If so, the plaintiff should be bound to the remedy

earlier chosen, not because of the election doctrine but because of the estoppel principle. Absent estoppel, he should be free to choose a different remedy.

■ In the present case it is argued on appeal that the buyer might have relied upon the sellers' statement, in the notice of default, that the contract would be "cancelled and terminated." However, the argument is nonspecific; the buyer does not contend that he actually did, or decided not to do, anything in reliance upon the notice. Although a forfeiture would produce a result more favorable to the purchaser than would other remedies later asserted by the sellers, there is no showing in the record that the purchaser changed his position in reliance upon this prospective advantage. In the summary judgment proceedings, neither the buyer nor his assignee submitted an affidavit concerning reliance; in fact, they submitted no affidavit at all. Nothing in the record otherwise suggests that reliance in fact occurred. In view of our Supreme Court's decision in *Gridley v. Ross, supra,* it has long been clear in Idaho that reliance is an issue where an election of remedies is alleged. We hold that absent a showing of reliance, the district court should not have bound the sellers to an "election" of the forfeiture remedy.

### III

■ We now turn to the other possible rationale for the court's decision—that a forfeiture declared by the sellers was self-executing. Although forfeitures are not favorites of the law, contracts expressly providing for them generally will be upheld. *Castleberry v. Hay,* 8 Idaho 670, 70 P. 1055 (1902). *Compare LaShonse v. Herrick,* 39 Idaho 67, 225 P. 1019 (1924) (no forfeiture allowed because contract only stated "moneys ... paid ... shall ... be absolutely void") *with Abercrombie v. Stoddard,* 39 Idaho 146, 228 P. 232 (1924) (forfeiture allowed because the correct word "forfeit" was used).

■ In this case we have noted that the contract expressly provided for a forfeiture, at the sellers' option, if the buyer defaulted. However, the contract—far from being a model of clarity—actually referred to forfeiture in three different ways. One paragraph of the contract instructed the escrow holder to return all papers upon the sellers' demand, if the demand were preceded by thirty days' notice of default to the buyer. The sellers never made such a demand. This paragraph is inapplicable to the instant controversy.

■ Another paragraph, appearing to entangle several different remedies, provided that the sellers could treat the contract as "null and void," deem the buyer's interest to be forfeited, and retain the buyer's prior payments or improvements to the property as "liquidated damages." The sellers never have treated the contract as a nullity. Moreover, the buyer's position is that the contract was terminated, not that it was avoided. Consequently, this paragraph also is inapplicable.

Finally, a third paragraph stated the following:

> [I]f the said sellers ... shall declare a forfeiture of this contract as herein provided, then said sellers shall be released from any and all liability in law or equity to convey the said premises to the said buyer, and buyer agrees to surrender upon demand of the said sellers ... and all rights of the said buyer under this agreement shall forthwith cease and terminate; provided, however, that no forfeiture herein shall become effective until the expiration of thirty (30) days' notice [without cure of the buyer's default].

This paragraph is enigmatic. Although it recites that the sellers may "declare a forfeiture ... as herein provided," the contract does not elsewhere mention such a declaration. The only communications by the sellers elsewhere specified in the contract, relating to forfeiture, are a demand to the escrow holder, a demand for possession, and a notice of default to the buyer. Consequently, this paragraph—standing alone—is incomplete. Unless supplemented, it could not be put into effect, much less be self-executing.

The buyer contends that the necessary supplementation is found in the sellers' "notice of default." Indeed, this notice went beyond mere advice that a default had occurred. After detailing the default, consisting of nonpayment and waste to the premises, the notice stated:

[O]wing to and on account of said default in the terms and conditions in said instrument, the said instrument and rights thereunder, in or to said property, will be cancelled and terminated by the undersigned owner of said property at the expiration of thirty (30) days from the date of service of this Notice upon you.

This is language of forfeiture. The reference to termination in thirty days ostensibly links the notice to the third forfeiture paragraph of the contract, quoted above.

However, there is a conflict between that paragraph and the notice. The contract paragraph provides that a forfeiture, once declared, "shall become effective" thirty days later unless the default has been cured. In contrast, the notice states that the contract "will be cancelled and terminated by the undersigned owner" in thirty days. The notice contemplates a future act by the sellers in order to effectuate the forfeiture.

In view of this conflict, we believe the forfeiture was not self-executing. Any forfeiture must strictly follow the terms of the contract, *Stockmen's Supply Co. v. Jenne,* 72 Idaho 57, 237 P.2d 613 (1951), and the terms of a notice of default or termination, *Marks v. Strohm,* 65 Idaho 623, 150 P.2d 134 (1944). Here, the third forfeiture paragraph of the contract could not be implemented without the forfeiture language in the default notice. The notice language must be read in its entirety; and when so read, it establishes a forfeiture only upon a future act by the sellers which never occurred.

We recognize, of course, that a forfeiture may be enforced when it is fully executed. In *Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977), our Supreme Court upheld such a forfeiture. There, the buyers had paid on a contract for several years, but the payments often were late. In one year, the sellers sent three thirty-day notices of termination. The sellers accepted two payments after the default cure periods had elapsed. However, after the third notice was sent and time had expired, the sellers withdrew papers from the escrow holder, demanded possession of the premises, and refused the buyers' subsequent tender of payment. The sellers' third notice of termination was held to be self-executing, and the buyers' rights under the contract were forfeited.

*Ellis* is factually distinguishable from the instant case in regard to the relationship between the notices given to the buyers and the sellers' conduct thereafter. Our research reveals that the *Ellis* notice stated, in part:

[The sellers are] giving you thirty days written notice of intention to terminate our agreement of Sale for failure to pay installments when due. If all back payments are not made within thirty days, we will terminate this contract and have you removed from the property. [Clerk's Record at 20.]

That notice, like the notice given in the present case, referred to a future act by the sellers. In *Ellis* such action was taken—escrow papers were withdrawn and possession was demanded. The forfeiture was complete. But in the present case, there was no such action by the sellers. They decided instead to seek other remedies in court.

We conclude that no forfeiture has occurred in this case. The sellers are not bound exclusively to that remedy. Summary judgment is reversed and the cause remanded to consider the remedies sought by the sellers. Costs to the appellants. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.