921 P.2d 185

**Tom L. DANIEL and Doris D. Daniel, husband and wife, Plaintiffs–Counter–Defendants-Appellants,**

v.

**Daniel E. O'DELL and Delores A. O'Dell, husband and wife, Defendants–Counter–Claimants–Respondents.**

No. 21928.

Court of Appeals of Idaho.

June 12, 1996.

Marcus, Merrick & Montgomery, Boise, for appellants. Gale M. Merrick argued.

Eismann Law Offices, Nampa, for respondents. Richard B. Eismann argued.

WALTERS, Chief Judge.

Tom and Doris Daniel appeal from an order of the district court awarding attorney fees to Daniel and Dolores O'Dell in a forfeiture action. The award was made pursuant to a land purchase contract between the parties which provided for attorney fees to the "prevailing party" should litigation arise. For the reasons expressed herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 1988, the Daniels sold a residence to the O'Dells. At the time of the sale, the Daniels's mortgage payments were in arrears in an amount of approximately $7,500 and they were facing the loss of the property through foreclosure. Pursuant to the sale, the Daniels and O'Dells executed an earnest money agreement which called for the O'Dells to pay off the arrearages, to assume the Daniels's mortgage and to pay the Daniels $3,000 in cash.

On August 14, 1990, the parties entered into a written sales agreement (the Agreement) which memorialized the 1988 sale. Paragraphs XII, XVII and XIX of the Agreement set forth the default procedure. Paragraph XII provided that if the O'Dells failed to perform pursuant to the Agreement, the escrow holder (West One Bank) would surrender and deliver the documents in escrow to the Daniels, unless the O'Dells cured the default within thirty days.

Paragraph XVII provided that if the O'Dells failed to make any payment of principal or interest under the Agreement, the Daniels could serve on the O'Dells a written notice "specifying such default or defaults." Like paragraph XII, this paragraph also stated that the O'Dells had thirty days in which to cure a default. Paragraph XIX provided, "Legal fees and costs incurred in connection with the giving of any notice of default as provided herein shall be paid in full by [the O'Dells]. It is agreed that the sum of $150.00 will be a reasonable fee for that service."

In 1991, the O'Dells failed to make three payments. On March 26, 1992, the O'Dells filed for Chapter 13 relief in the United States Bankruptcy Court for the District of Idaho. The O'Dells's amended Chapter 13 plan was confirmed upon the recommendation of the trustee. Under the provisions of the confirmed plan, the O'Dells were to pay to the trustee in installments the $4,370 in arrearages owing to the Daniels, and the trustee would make monthly payments to the Daniels. The current house payments due under the Agreement were not included in the plan and were to made by the O'Dells directly to the Daniels through West One Bank pursuant to the Agreement.

On February 5, 1993, West One forwarded to the O'Dells a notice of default executed by the Daniels on the same date, entitled "Notice of Forfeiture Under Contract and Demand for Possession of Premises." The notice did not specify particular payments which were in default, but simply advised the O'Dells that:

... [You] have failed, refused and neglected to pay the following:

1. Payments in arrears in the sum of approximately $7,104.43; which the [Daniels] have to advance in order to avoid an acceleration of the entire unpaid balance by the lender; in addition, any interest accrued and accruing thereon and other penalties and attorney fees of approximately $1,230.00 and fees now being incurred.

The notice also stated that the Agreement would be forfeited unless the O'Dells paid the amounts due under the Agreement within

thirty days, and that the Daniels could take immediate possession of the premises. The O'Dells were further notified that if the forfeiture became final, the Daniels would make demand upon West One for return of all documents in escrow.

On February 8, 1993, the O'Dells made the January and February 1993 payments to West One in the sum of $1,995, and West One notified the Daniels of these payments.[1] By letter dated February 10, 1993, the Daniels advised West One that such amount did not cure the amount of default declared by the Daniels in the February 5, 1993, notice.

In a letter dated February 16, 1993, the O'Dells requested that the Daniels provide "a breakdown of the payments you contend are in default pursuant to the [notice of default]." There is no indication in the record that the Daniels provided the requested information to the O'Dells prior to the filing of the Daniels's complaint.

On April 23, 1993, the Daniels filed a complaint against the O'Dells, which alleged a right to possession of the property and stated that the Daniels had recovered the quitclaim deed to the property from the escrow and had recorded the deed, thereby quitclaiming the property back to the Daniels. The O'Dells denied being in default and counterclaimed, seeking reinstatement of the escrow established under the Agreement.

On January 30, 1995, the district court entered judgment in favor of the O'Dells, holding that the Daniels's notice of default was insufficient because it demanded attorney fees greater than that permitted by the Agreement and included in its calculation of amount due a monthly payment not yet in default. Therefore, the court dismissed the Daniels's complaint and ordered reinstatement of the escrow.

The court also awarded attorney fees to the O'Dells in the amount of $13,500, pursuant to paragraph XXII of the Agreement, which provided for the award of reasonable attorney fees to the prevailing party in litigation arising out of any term of the Agreement. The Daniels appeal from the award of attorney fees, arguing that the district court erred in determining that the notice of default was deficient and that therefore the O'Dells were not the prevailing party under the Agreement.[2]

## ANALYSIS

The district court's award of attorney fees in this case was made pursuant to paragraph XXII of the Agreement which states, "In the event of litigation arising out of any term or provision contained herein, the prevailing party will be entitled to recover all costs and a reasonable attorney's fee." In determining a reasonable attorney fee, the court applied the factors set forth in I.R.C.P. 54(d). The Daniels do not argue that the court improperly applied Rule 54(d). Rather, they assert that the court erred in concluding that the notice of default was deficient and in dismissing the Daniels's complaint and reinstating the escrow. Thus, the Daniels contend, the O'Dells were not prevailing party and not entitled to attorney fees under the Agreement.

The district court held that the notice of default was deficient in that the amount alleged to be in arrears, $7,104.43, included a payment of $896, which was not due until March 1, 1993. In addition, the notice requested attorney fees in the amount of $1,230, contrary to paragraph XIX of the Agreement which limited legal fees and costs incurred in preparing a notice of default to $150. Resolution of this case therefore cen-

1. According to the Daniels's evidence presented later at trial, the $7,104.43 figure in the notice of default included several monthly payments missed by the O'Dells in 1992 and three payments in 1993, including the payment for March, which was not yet due when the notice of default was delivered but which would become due during the 30–day cure period.

2. The O'Dells filed a motion to dismiss this appeal, on the ground the Daniels had acquiesced in the judgment entered by the district court when the Daniels re-established the escrow in compliance with the district court's order contained in the judgment. The Supreme Court denied the motion, subject to renewal at oral argument. Having heard the O'Dells's renewed arguments in support of dismissal, we decline to disturb the prior order denying their motion to dismiss.

ters on the interpretation of the parties' Agreement.

■ Interpretation of an ambiguous document presents a question of fact. *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986); *see also Pollard Oil Co. v. Christensen*, 103 Idaho 110, 115, 645 P.2d 344, 349 (1982). On the other hand, interpretation of an unambiguous document is a question of law over which this Court exercises free review. *DeLancey, supra; see also Treasure Valley Plumbing v. Earth Res.*, 115 Idaho 373, 375–76, 766 P.2d 1254, 1256–57 (Ct.App.1988). The determination of whether a document is ambiguous is itself a question of law, reviewed *de novo*. *DeLancey, supra; see also Pocatello Industrial Park, Co. v. Steel West, Inc.*, 101 Idaho 783, 789, 621 P.2d 399, 405 (1980). Because we conclude that the Agreement in this case is unambiguous, we exercise free review in interpreting its terms and in determining whether the notice of default complied with those terms.

■ In reviewing the notice of default in this case, we also recognize the general principle that "forfeitures are abhorrent to the law and all intendments are against them." *Stockmen's Supply Co. v. Jenne*, 72 Idaho 57, 63, 237 P.2d 613, 617 (1951); *see also Thompson v. Fairchild*, 93 Idaho 584, 586, 468 P.2d 316, 318 (1970); *Dohrman v. Tomlinson*, 88 Idaho 313, 319, 399 P.2d 255, 259 (1965). Any forfeiture must strictly follow the terms of the contract, and the terms of a notice of default or termination. *Keesee v. Fetzek*, 106 Idaho 507, 512, 681 P.2d 600, 605 (Ct.App. 1984).

■ The Agreement in this case provided that if the O'Dells failed to comply with its terms, the Daniels could declare the Agreement terminated or forfeited by sending the O'Dells a notice "specifying such default or defaults." Further, the Agreement provided that the O'Dells had thirty days in which to cure a specified default.

The parties' Agreement is similar to that found in *Marks v. Strohm*, 65 Idaho 623, 150 P.2d 134 (1944). In *Marks*, the sellers of a parcel of land sent a notice to the buyers stating that the buyers had defaulted by failing "to pay all delinquent taxes on the sellers' lands, those herein described, and other lands for the years 1934, 1936, 1938 and 1939." 65 Idaho at 626, 150 P.2d at 135. This notice complied with the land purchase contract, which provided that if the sellers wished to terminate the contract, they were required to send the purchaser a notice of termination which "set forth 'such default.'" 65 Idaho at 628, 150 P.2d at 136. On appeal, the our Supreme Court stated: "This requirement was evidently intended to enable the purchaser to forthwith comply with the requirement of the contract or suffer the forfeiture. For that reason, the contract required the notice to set forth the default by stating in what the default consisted." *Id.* (emphasis deleted). Because the notice in *Marks* specified the years for which taxes were delinquent, the purchaser was advised of the specific payments which were in default and was able to cure the default prior to the filing of the seller's complaint. *Id.*

Unlike *Marks*, in the instant case the notice of default sent to the O'Dells did not comply with the Agreement's requirement that the Daniels notify the O'Dells of the "specific[ ] default or defaults." Instead, the notice demanded payment of amounts that were not yet due, and it provided no itemization of the allegedly delinquent payments that would have allowed the O'Dells to ascertain how the $7,104.43 total was computed. Consequently, the O'Dells were not able to "comply with the requirement of the contract," *Marks, supra*, by curing such default within thirty days, thereby avoiding having to "suffer the forfeiture." *Id.*

■ The Daniels argue that the amount tendered by the O'Dells in an attempt to cure the default was only $1,995, significantly less than the $7,104.43 recited in the notice and that therefore the "district court should have made the determination that the tender was insufficient and known to be so dramatically insufficient as to constitute ignoring of the notice and not a good faith attempt to accomplish a cure of the existing default." We disagree. As stated by our Supreme Court in *Dohrman:*

> Tender is the unconditional offer of a debtor to the creditor of the amount of his

debt. This means the real amount of the debt as fixed by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. *This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due,—actually due.*

88 Idaho at 318, 399 P.2d at 258, *quoting Kelley v. Clark,* 23 Idaho 1, 12, 129 P. 921, 924 (1912) (emphasis added). *See also Farrell v. Brown,* 111 Idaho 1027, 1032, 729 P.2d 1090, 1095 (Ct.App.1986) (citations omitted) ("Notice must be clear, definite, explicit and unambiguous. A notice is not clear unless its meaning can be apprehended without explanation or argument.").

In the instant case, the Daniels suggest that the O'Dells were required to offer "an amount beyond reasonable dispute," *Dohrman, supra,* rather than the amount "actually due." *Id.* The O'Dells assert in response that, pursuant to the contract, they cured the default within thirty days by tendering, on February 8, 1993, the amount they believed was actually due, namely, $1,995, which represented payments for January and February, 1993. Because the Daniels did not comply with the Agreement's requirement that the notice specify the default or defaults, the Daniels cannot be heard to complain that the O'Dells failed to offer an amount conforming to the inflated lump sum amount alleged in the notice.

■ The Daniels also assert that the Agreement between the parties was a "time is of the essence" agreement. They appear to argue that it was consequently permissible for the Daniels to demand any payment which would come due during the "cure period".[3] This would include the payment for March, 1993, not yet due at the time of the notice.

However, while paragraph XVII of the Agreement does contain "time is of the essence" language, the same paragraph provides that action can be taken to "declare this Agreement terminated and forfeited"

only "if such default or defaults shall not be removed by [the O'Dells] within thirty (30) days after the date of mailing of written notice specifying such default or defaults...." Therefore, the "time is of the essence" language had no impact on the Agreement's requirement that the notice specify the amounts then in default, and not amounts which may become due sometime in the future.

■ The Daniels next argue that, contrary to the district court's decision, paragraphs XXI and XXII of the Agreement provide for the assessment of attorney fees beyond the amount of $150 permitted by paragraph XIX for legal fees and costs incurred in connection with preparing the notice of default. The language at issue in paragraph XXI states:

If the [O'Dells] fail to pay any taxes, charges, assessments, premiums for insurance or obligations to maintain a clear title or other bills or liens rendered against said property, [the Daniels], at their option, shall have the right to procure the same, together with necessary costs and legal fees....

Unlike paragraph XIX, this paragraph does not address the payment of costs associated with the preparation of a notice of default and is therefore inapplicable. The same is true of paragraph XXII, which states: "In the event of litigation arising out of any term or provision contained herein, the prevailing party will be entitled to recover all costs and a reasonable attorney's fee." At the time of the notice, in which the Daniels demanded $1,230 in attorney fees, litigation had not yet commenced. Thus, the only amount which could reasonably be requested at the time the notice of default was prepared and served was the amount provided by paragraph XIX for "[l]egal fees and costs incurred in connection with the giving of any notice of default as provided for herein," namely, "the sum of $150.00." [4]

Based on the foregoing, we conclude that the district court did not err in holding that the notice of default was deficient and in dismissing the Daniels's complaint and rein-

3. In support of this argument, the Daniels quote an excerpt from *Curry v. Tucker,* 616 P.2d 8 (Alaska 1980). However, *Curry* does not support the Daniels's position.

4. The Daniels also cite *Dolbeer v. Harten,* 91

stating the escrow. As a result, the court properly concluded that the O'Dells were the prevailing party and therefore were entitled to attorney fees under paragraph XXII of the Agreement.

## CONCLUSION

We conclude that the district court properly ruled that the notice of default was deficient in that it did not comply with the Agreement's requirement that the notice "specify[ ] the default or defaults," and included a sum not in default as well as a sum for attorney fees greater than that provided for by the Agreement. Therefore, the district court did not err in dismissing the Daniels's complaint and reinstating the escrow. Accordingly, we hold that the O'Dells were the prevailing party and entitled to attorney fees under the Agreement. The judgment and the order awarding attorney fees are affirmed.

Pursuant to paragraph XXII of the Agreement, costs and reasonable attorney fees on appeal are awarded to the respondents, O'Dells.

LANSING and PERRY, JJ., concur.

Idaho 141, 417 P.2d 407 (1965), and *Clampitt v. A.M.R. Corp.*, 109 Idaho 145, 706 P.2d 34 (1985),

without setting forth why they believe these cases applicable. We conclude they are inapposite.